James Albert MORGAN, Appellant,

v.

Sharon Kay MORGAN, Appellee.

No. 01–82–0596–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 18, 1983.
Rehearing Denied Sept. 15, 1983.

**486**

George Karam, Houston, for appellant.

Lewis Dickson, Tom Coleman, Houston, for appellee.

Before JACK SMITH, LEVY and DUGGAN, JJ.

## OPINION

DUGGAN, Justice.

Appellant, the husband/respondent in this suit, appeals from that portion of the divorce decree dividing the community property, awarding attorney's fees, and issuing a permanent injunction. He challenges the trial court's findings of fact and conclusions of law relating to these items. The divorce, conservatorship, and child support issues were settled between the parties and approved by the court. Appellant asserts four points of error.

Appellant's first point of error attacks the legal and factual sufficiency of the evidence to support the trial court's Conclusion of Law No. 1 that the division of community property was just, fair and equitable.

The court found, in its Conclusion of Law No. 1, as follows:

At the time of the dissolution of the marriage, neither party was possessed of any separate property, and all property of which the parties were possessed or which they owned or otherwise had an interest was community property. The evidence is sufficient as a matter of law to justify and sustain the division of the parties' community estate and the respective awards in and to the same, as is reflected

by the "Final Decree of Divorce" signed by the Court on July 2, 1982, and further that the said respective awards constitute a just, fair and equitable division of the parties' community estate in light of the approximate 18 years of marriage, the joint efforts of the parties in bringing about the growth of the community business, Morgan Machine Shop, Inc., the respective responsibilities of conservatorship, and the disparity between the earning capabilities of the parties, now and in the future.

■■■ Appellant's no evidence (legal insufficiency) contention was not properly preserved for review since he made no prejudgment objections or motions on this claim. *Commercial Insurance Company of Newark, New Jersey v. Puente,* 535 S.W.2d 948, 950 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.). *See* Cornelius, *Appellate Review of Sufficiency of the Evidence Challenges in Civil and Criminal Cases,* 46 Tex.B.J. 439 (1983). The issue on appeal is therefore whether the trial court's conclusion that the division was just and fair is against the great weight and preponderance of the evidence. To prevail on this point, appellant must overcome both the presumption in favor of the trial court's judgment, *Southwestern Bell Telephone Co. v. Griffith,* 575 S.W.2d 92, 96 (Tex.Civ.App. —Corpus Christi 1978, writ ref'd n.r.e.), and the presumption that the trial court properly exercised its broad discretion in dividing the marital property. *Murff v. Murff,* 615 S.W.2d 696, 699 (Tex.1981); *Price v. Price,* 591 S.W.2d 601, 605 (Tex.Civ.App.—Texarkana 1979, no writ).

Appellant argues that the trial court erred by placing an excessive valuation on the couple's business, Morgan Machine Shop, Inc. The court's determination of the values and liabilities as to the remainder of the marital estate, all of which was community property, was primarily based upon stipulations of the parties and is not contested. The fairness of the property division turns upon the soundness of the court's Finding of Fact No. 19, which reads:

With regard to the value, and more particularly, the "operating" value of the community business known as Morgan Machine Shop, Inc., having considered the equipment, the various exhibits offered by Petitioner and admitted into evidence, and particularly Petitioner's exhibits 2 through 10 and 24, the testimony of the certified public accountant, Greg Frazier, admitted into evidence without objection, the Court finds that Morgan Machine Shop Inc., has an overall value of at least $450,000.00.

The appellant's complaints regarding this finding center around the competency of the testimony of the appellee's expert witness, a certified public accountant who stated that, in his opinion, the fair market value of the business was $567,000.00.

■■ Appellant's allegation that the expert's testimony should have been excluded because the witness lacked the necessary qualifications to testify to the value of the machine shop is without merit. The qualification of a witness to testify is a matter to be determined by the court, subject to review only upon a showing of abuse of discretion. *Hodges v. State,* 403 S.W.2d 207, 212 (Tex.Civ.App.—Texarkana 1966, writ ref'd n.r.e.). Appellant asserts no such abuse of discretion by the court here on appeal, and he made no objection to the admission of the witness' testimony at trial. The record indicates that the witness graduated with a bachelor of science degree in accounting and finance from Virginia Polytech Institute and completed graduate courses at Georgia State University; that he was employed by a firm of certified public accountants, working primarily with closely held real estate and manufacturing businesses and individuals; and that he had extensive experience as a certified public account and auditor with Touche Ross & Company, the Zapata Corporation, and an accounting firm in Atlanta, Georgia.

■■■ Appellant particularly asserts that the expert lacked the ability to properly determine the value of a machine shop, the bulk of whose business is derived from the oil and gas industry. The witness's testimo-

ny showed, to the contrary, his previous evaluation of two businesses similar to a machine shop in operation and his familiarity with the current status of the oil and gas industry. The witness' qualifications are quite adequate. Moreover, the strength or weakness of a witness' qualifications is merely a factor to be considered in weighing his testimony. *Dillon v. Troublefield,* 601 S.W.2d 141, 143 (Tex.Civ.App.—Austin 1980, no writ).

■ Appellant also claims the expert's testimony was not "factually sufficient" to support his conclusion that the fair market value of Morgan Machine Shop, Inc., was $567,000. More specifically, he objects that the accountant determined the fair market value by the use of speculative, conjectural, and unorthodox procedures and did not try to establish a market value for the business as of the date of trial, but rather sought to use an income capitalization test based on nine-month-old data. Appellant further complains that certain "adjustments" and "further cash flow" predictions were not justified or explained as procedures customarily and usually relied on by experts in the field.

The machine shop valued by the expert is housed in two buildings, owned by the parties' holding company, at 14434 and 14450 Chrisman in Houston, Texas. The business entity, known as Morgan Machine Shop, Inc., was incorporated in 1976 and is wholly owned by the husband and wife. The accountant's testimony concerned only the fair market value of this operation. He testified that he based his valuation upon the company's income tax returns for fiscal years ending September 30, 1977 through 1981, and upon unaudited financial statements prepared by Starr Thrower & Company, Certified Public Accountants, for the 1978 through 1982 fiscal years. He was informed by a representative of Starr Thrower & Company that those were the most recent statements available. On redirect examination the expert witness reaffirmed that the figures used in his analysis were derived from these records provided by the appellant and his accountants.

This court takes judicial notice that income tax returns and financial statements are the kind of records generally relied upon by accountants in analyzing the worth of a business. Also, appellant's claim that the expert's opinion was premised on hearsay is without merit since all the information was furnished to the C.P.A. by the appellant.

With regard to the age of the documents used, the expert based his calculations upon the latest figures available; the trial was in June of 1982, before the end of the company's 1982 fiscal year. The accountant conceded that he had no idea of the financial status of the company on the day of trial. The currency or lack thereof of the data upon which his opinion was based is a factor bearing upon the weight to be given to his testimony. Further, the record shows a finding by the court that appellant not only resisted motions for production and for the appointment of an appraiser but also refused to permit appellee's attorney to photograph the land, buildings, and equipment of Morgan Machine Shop, Inc. This refusal necessitated a motion for contempt and a court order before such discovery was permitted by appellant. Appellant cannot now prevail by a claim of prejudice from the use of old data when he obstructed appellee's attempts to obtain any data at all.

As to the method by which he obtained an operating value for the shop, the accountant testified that the income tax returns, which were prepared on a cash basis, were inadequate to give him a "picture of the company's performance" since not all the essential information was contained therein. For this reason, he also examined the accrual basis financial reports. The figures from these tax returns and statements were listed by him on a chart and referred to throughout the expert's testimony.

The accountant then evaluated the earnings history and historical growth rate and explained the steps by which he capitalized the annual earnings on an after-tax basis. Concluding that the shop generated a pre-tax cash flow of $119,961 for 1981, he determined the after-tax cash flow by assuming

an amount of $36,550 as compensation appellant would pay himself and factoring in a 30% tax rate, a rate he termed conservative. The after-tax cash flow for 1981 was, for example, $85,000. Finally, the expert chose a capitalization rate of 15% as a yield an investor in the current market would expect from his investment and divided the after-tax cash flow by 15% to arrive at a total of $567,000 as the fair market value of the property. ($85,000 capitalized at a 10% rate would be $850,000; at 20%, $425,000).

"Fair market value" was defined by this court in *Wendlandt v. Wendlandt,* 596 S.W.2d 323, 325 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ), as

> the amount that a willing buyer ... would pay to a willing seller, who desires to sell, but is under no obligation to sell. (citing authority).

This standard or test presupposes an existing, established market. *Id.*

While it is true that the accountant never testified specifically that he took this standard into consideration, it is obvious that he did consider the standard. The whole purpose of his analysis by income capitalization was to arrive at the amount of money a willing investor today would pay for Morgan Machine Shop, Inc. This total of $567,000 was, in his opinion, what a willing buyer would pay a willing seller in order to gain a 15% return on his investment.

Appellant also objects that the expert witness offered no evidence of market value in the vicinity of the shop and made no attempt to establish a market for the business as of the date of trial. With regard to the latter, the witness presupposed a market as of September 30, 1981, the last day for which he had records, and he testified to that effect. The appraisal here involved the worth of an operating business rather than real estate. Comparable sales within the area, if available, would have been of minimal help in estimating the worth of this particular machine shop. This court has recognized the income approach as one of three approved methods of appraising the market value of property and has even upheld this approach when applied to va-

cant, unimproved land in order to ascertain its income-producing potential. *City of Houston v. West,* 514 S.W.2d 299, 304 (Tex. Civ.App.—Houston [1st Dist.] 1974), *rev'd on other grounds,* 520 S.W.2d 752 (Tex. 1975).

Appellant cites *Stone v. Lawyers Title Insurance Corporation,* 537 S.W.2d 55 (Tex. Civ.App.—Corpus Christi 1976), *rev'd in part, aff'd in part on other grounds,* 554 S.W.2d 183 (Tex.1977), as support for his objection to the expert's use of "adjustments" and "further cash flow" predictions. Projected rental income, projected future occupancies, estimated management fees and expenses, and an assumed capitalization rate were held in *Stone* to be too speculative to be considered as the basis for the expert's opinion on the market value of land. That case is inapposite here because it dealt with the diminished value of land and "all opinion of depreciated market value is, at best, something of a speculation." *Southwestern Public Service Co. v. Vanderburg,* 581 S.W.2d 239, 245 (Tex.Civ.App.— Amarillo 1979, writ ref'd n.r.e.).

Appellant further complains that the expert's opinion was partly based upon the assumption that all accounts receivable would be paid. This supposition was a reasonable one since, as the accountant testified on cross-examination, no substantial amount of bad debt was reflected on the tax returns he examined. The conservativeness of his estimate as to the amount appellant might continue to withdraw for himself as salary (a necessary estimate in order to reach an after-tax cash flow number) is borne out by the corporate income tax forms for 1979 and 1980, where appellant reported compensation to himself of $49,763 and $36,550 respectively.

As appellant claims, the expert testimony did not include a statement of the tangible net worth of the shop's assets. We note also that, although the record indicates that the accountant made some determination of net worth and listed it on his chart, he does not appear to have taken net worth into account in arriving at his estimate of fair market value.

Tangible net worth is only one of many factors considered by the Internal Revenue Service in valuing closely-held securities for estate tax purposes, Featherston, *Valuation of Closely-Held Securities Owned as Community Property*, 44 Tex.B.J. 161, 162 (1981), and many courts have considered asset value, in the case of an operating company with consistent earnings, of considerably less importance in valuation than earnings, Longnecker, *A Practical Guide to Valuation of Closely Held Stock*, 122 Trusts & Estates 32, 32 (1983). Earnings have occasionally been the only factor used to determine value. *See City of Houston, supra;* Longnecker, *supra.* The trial court had before it the report of the court-appointed appraiser stating a $75,000 value for equipment in the shop, as well as evidence of any indebtedness thereon. We therefore conclude that no harm resulted from absence of a statement of net worth.

Appellant notes the trial court's error in considering Petitioner's Exhibit No. 24 as evidence in placing a value on the business when such exhibit was never offered or received in evidence. Exhibit No. 24 was a chart prepared by the accountant showing the method and the figures he employed in arriving at a fair market value for the shop. Most of the numbers listed on Exhibit No. 24 came from Exhibits 2 through 10, which were in evidence. Those numbers remaining were conservative predictions—adjustment figures and tax estimates—previously mentioned.

In short, the expert's opinion, as shown by this record, may be optimistic in view of the slump in the oil industry, upon which most of appellant's business depends, but the opinion is grounded on accepted accounting principles and facts in evidence. The Texas Supreme Court stated in *Lewis v. Southmore Savings Association*, 480 S.W.2d 180, 186 (1972), that a qualified expert may give his opinion and relate sources which are customarily and usually relied upon by experts in the field upon which he partially relied in forming his opinion, together with his own personal knowledge, which supports or tends to support that opinion. In 1980 the Court, in *Moore v.*

*Grantham*, 599 S.W.2d 287 (Tex.1980), reiterated the settled rule in *Reed v. Barlow*, 157 S.W.2d 933, 935 (Tex.Civ.App.—San Antonio 1941, writ ref'd), that a duly qualified expert witness may give his opinion based upon sufficient relevant facts so long as those facts are within his personal knowledge, or assumed from common or judicial knowledge, or established by evidence. We conclude that the expert's opinion is shown to be well-supported.

In a non-jury case such as this, the trial court is the judge of the credibility of the witnesses and the weight to be given their testimony. *Ogle v. Enterprises Limited Co., Inc.*, 538 S.W.2d 175, 177 (Tex.Civ. App.—Dallas 1976, no writ). In placing a value of $450,000 on the machine shop, the court stated, in its Finding of Fact No. 19, that consideration also was given to the financial documents in evidence and the stipulated report of the court-appointed appraiser. Appellant offered no expert testimony; however, his own opinion that the business is worth nothing, or $75,000 at most, appears in the record. We note that appellant bases his opinion solely upon net asset value. The reduction of the expert's evaluation from $587,000 to $450,000 shows the court's due allowance for all of the factors presented by appellant. Even if the couples' business was overvalued by the court, this would not, in and of itself, constitute an abuse of discretion. *Thomas v. Thomas*, 603 S.W.2d 356, 358 (Tex.Civ.App. —Houston [14th Dist] 1980, no writ). There is ample, competent evidence to support Finding of Fact No. 19.

The total estate of the parties, consisting of four tracts of real estate valued at $223,-000, the machine shop valued at $450,000, cash of $21,300, life insurance of $3,000, and other items of personal property, was worth more than $700,000. Total community liabilities, as stipulated, equal $132,901, leaving a net estate of about $568,000.

The appellee received, as her portion of the estate, the home valued at $43,000; a judgment against her husband in the amount of $145,000, payable $1,000 per

month for 145 months, bearing no interest and having a present cash value, according to appellee, of about $84,000; sixteen acres in Montgomery County valued at $40,000; an award of $50,000 to be paid to Percy Foreman for his attorney's fees; stock valued at $500; and $5,000 in cash. Remaining assets and debts were awarded to the husband, except for two promissory notes totalling $14,500 to be paid by the wife. The approximate total value of the property awarded to the wife, including the fee awarded to her attorney, is therefore between $208,000 and $269,000. The husband's share of the community estate, after taking into account its liabilities, including the judgment for the wife and for attorney's fees, is between $299,000 and $360,000. The preponderance of the evidence shows not only a just and equitable division of the marital property but also a reasonably accurate appraisal of that property. We find no abuse of discretion with respect to Conclusion of Law No. 1. Appellant's first point of error is overruled.

By his second point of error, appellant asserts that the trial court erred in awarding $50,000 as a reasonable and necessary fee to appellee's attorney, Mr. Percy Foreman, in that (1) his name does not appear in appellee's petition for divorce, such that the judgment thus fails to conform to the pleadings; and alternatively, (2) the evidence in support of the award of a fee to Mr. Foreman is insufficient. By his third point of error, appellant claims the evidence is insufficient to show that a judgment against appellant in favor of Mr. Foreman in the amount of $50,000 was a just, fair and equitable allocation of the community estate, considering the condition and needs of the parties in the circumstances.

The trial court's decree orders appellant to pay Mr. Foreman immediately the sum of $8,005.31 in cash from his checking account at North Harris County Bank and to pay the $41,994.68 balance within thirty days of the signing of the decree, or pay interest thereon at the rate of 9%, with Mr. Foreman authorized to seek a writ of execution. Appellee's first amended original petition includes the following paragraph:

It was necessary to secure the services of WILLIAM F. FERGUSON, a licensed attorney, to prepare and prosecute this suit. Respondent should be ordered to pay a reasonable attorney's fee, and judgment should be rendered in favor of this attorney and against Respondent.

The prayer for relief in the same petition includes the following:

Petitioner prays that the Petitioner's attorney be awarded a judgment against Respondent for reasonable attorney's fees. Petitioner prays for general relief.

■ Appellant cites Rule 301 of the Texas Rules of Civil Procedure and several court decisions for the proposition that a trial court may not grant relief which is not supported by the pleadings. Thus, he asserts, that portion of the judgment granting fees to Mr. Foreman is void since appellee's trial petition named her prior attorney, Mr. Ferguson, as the attorney in whose behalf a reasonable attorney's fee was sought. The inclusion in appellee's petition of a paragraph specifically requesting attorney's fees and the prayer for general relief were each sufficient to sustain the award. In fact, a prayer for general relief would alone have sufficed to authorize the award of attorney's fees directly to the attorney. *Goldberg v. Goldberg,* 392 S.W.2d 168, 171 (Tex.Civ.App.—Fort Worth 1965, no writ), *cited with approval in Rampy v. Rampy,* 432 S.W.2d 175, 176 (Tex.Civ.App.—Houston 1968, no writ). As in *Rampy* and *Goldberg,* this feature of the judgment does not give rise to any error about which appellant can complain. The only complaints that might be heard would be those of appellee or her prior attorney, and no such complaints have been made. *Rampy,* at 176; *Goldberg,* at 170–171.

■ Factors to be considered by the fact finder in determining the reasonableness of the fee awarded to Mr. Foreman are those set out in *Braswell v. Braswell,* 476 S.W.2d 444, 446 (Tex.Civ.App.—Waco 1972, writ dism'd) and include:

(1) the time and labor involved;

(2) the nature and complexities of the case;

(3) the amount of money or the value of the property or interest involved;

(4) the extent of the responsibilities assumed by the attorney;

(5) whether other employment is lost by the attorney because of the undertaking;

(6) the benefits resulting to the client from the services;

(7) the contingency or certainty of compensation; and

(8) whether the employment is casual or for an established or constant client.

*See Treadway v. Treadway,* 613 S.W.2d 59, 60 (Tex.Civ.App.—Texarkana 1981, writ dism'd).

The reasonableness of attorney's fees is a fact question which must be supported by competent evidence. *Great American Reserve Insurance Co. v. Britton,* 406 S.W.2d 901, 907 (Tex.1966). Appellant correctly contends that the appellee's agreement with Mr. Foreman to pay him $50,000 is not competent evidence in support of the award, *Leal v. Leal,* 628 S.W.2d 168, 171 (Tex.App.—San Antonio 1982, no writ), nor is the general statement by Mr. Foreman at trial that $150,000 was a reasonable and necessary attorney's fee in this case competent evidence in support of the issue of reasonableness. *Meshwert v. Meshwert,* 543 S.W.2d 877, 879 (Tex.Civ.App.—Beaumont 1976), *aff'd* 549 S.W.2d 383 (Tex.1977). *See Saums v. Saums,* 610 S.W.2d 242, 243 (Tex.Civ.App.—El Paso 1980, writ dism'd). This court must review the whole of the record to determine whether the amount of the award is contrary to the overwhelming weight of all the evidence. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951). However, such evidence on attorney's fees must be viewed in the light most favorable to the prevailing party. *Mogford v. Mogford,* 616 S.W.2d 936, 945 (Tex.Civ.App.—San Antonio 1981, no writ).

Thirteen of the trial court's thirty-nine detailed findings of facts (Numbers 2 through 14), and one of the trial court's five conclusions of law (Number 5), relate to the award and reasonableness of attorney's fee.

The court found that, overall, Foreman dedicated approximately 1,000 hours toward the case in preparation of pleadings and orders, consultation with the appellee and other witnesses, briefing, time in court, and directing the efforts of Lewis Dickson, his associate, who spent hundreds of hours in preparation for the litigation and actual time in court.

Appellant did not challenge any of these findings or any of the trial court's conclusions of law at the time of filing by request for additions or amendments. Tex.R.Civ.R. 298. Moreover, review of the record reveals sufficient evidence to support the contested findings. Appellant's second point of error is overruled.

With regard to appellant's third point of error, the evidence is also sufficient to support the court's judgment for attorney's fees in favor of Mr. Foreman against appellant as a just, fair and equitable allocation of the community property.

In a divorce suit, the court has equitable power to award to either spouse attorney's fees as part of the just and fair division of the marital estate. Tex.Fam. Code Ann. § 3.63 (Vernon Supp.1982); *Carle v. Carle,* 149 Tex. 469, 474, 234 S.W.2d 1002, 1005 (1950).

By his Conclusion of Law No. 5, the trial judge held as follows:

5. The award of attorney's fees to Percy Foreman in the amount of $50,000 was a reasonable and necessary fee in Harris County, Texas, for the services rendered by the said Percy Foreman on behalf of the Petitioner herein. And further, that the same was a just, fair and equitable allocation of the community estate of the parties when considering the condition and needs of the parties and all of the surrounding circumstances.

The court's Finding of Fact No. 20, unchallenged by appellant, reads:

20. The court finds that Respondent, JAMES ALBERT MORGAN, is a skilled and experienced machinist, whose exposure to business and the management of

a corporate entity will ensure continuing financial prosperity, and that the financial earning ability of Respondent, JAMES ALBERT MORGAN, far exceeds that of Petitioner, SHARON KAY MORGAN, now and in the future.

As stated under the discussion of the first point of error, appellant received more than half of the community estate. The financial standing of the parties and their disparate earning capacities are among the factors to be considered in awarding attorney's fees. *Mills v. Mills,* 559 S.W.2d 687, 689 (Tex.Civ.App.—Fort Worth 1977, no writ); *Zaruba v. Zaruba,* 498 S.W.2d 695, 700–701 (Tex.Civ.App.—Corpus Christi 1973, writ dism'd). The record adequately supports the trial court's allocation of attorney's fees as a debt to be paid by appellant. Appellant's third point of error is overruled.

Appellant's fourth point of error asserts abuse of discretion by the trial court in entering a permanent injunction against appellant when no request for such relief was pled and no proof in support of injunctive relief was offered.

Among the properties awarded to appellant in the divorce decree were the parties' corporation, known as Morgan Holding Properties, Inc., which held title to the real property deeded by the couple to that corporation; the business entity known as Morgan Machine Shop, Inc.; and the corporate checking account. To equalize the awards to the spouses, the decree grants to appellee, in addition to the homestead and certain other property and attorney's fees, a judgment against appellant for $145,000, to be paid in monthly installments of $1,000 for 145 months and secured by a judgment lien on the assets of Morgan Machine Shop, Inc., and all real property, including improvements thereon. The decree specifically enjoins appellant

> from doing any act, or causing, or permitting or allowing any act to encumber such properties, specifically, the real property heretofore awarded to Respondent, as well as the commercial building located thereon, the assets of Morgan Ma-

chine Shop, Inc., including all equipment and machines of Morgan Machine Shop, Inc., and all accounts receivable, other than they are now encumbered or in any way lessening the present security interest of Petitioner therein, including any corporate transfer or stock transfer of any nature whatsoever.

The effect of this injunction is to prohibit appellant from using any of his business property as collateral for a period of twelve years and to require that he operate solely with cash on hand.

Since the judgment had the effect of creating a debt against appellant, contempt proceedings would not be available as a remedy if the appellant were to refuse to pay the installments when due. *Ex parte Weatherly,* 605 S.W.2d 661 (Tex.Civ.App.—Amarillo 1980, no writ); *McCauley v. McCauley,* 374 S.W.2d 719, 722–723 (Tex. Civ.App.—Waco 1963, writ dism'd). By issuing this injunction, the court apparently sought, instead, to make any attempt to encumber the property or lessen appellee's interest therein enforceable by contempt proceedings. Tex.R.Civ.Pro. 692.

The appellant did not ask for injunctive relief in her first amended original petition but did pray for general relief. The fact she did not plead by verified petition would not, in itself, show abuse of discretion in granting such relief. A divorce court has authority under Section 3.63 of the Family Code (Vernon Supp.1982) to construe pleadings more liberally than in other civil cases. *Lindsey v. Lindsey,* 564 S.W.2d 143, 145 (Tex.Civ.App.—Austin 1978, no writ). Moreover, there is authority for the granting of an injunction even when such relief has not been pled by verified petition in accordance with Rule 682 of the Rules of Civil Procedure so long as a full hearing on the issue has been had. *Dickson v. Dickson,* 516 S.W.2d 28, 29 (Tex.Civ.App.—Austin 1974, no writ); *Magnolia Petroleum Co. v. State,* 218 S.W.2d 855, 856 (Tex. Civ.App.—Austin 1949, writ ref'd n.r.e.).

There is no question that a trial court may issue an injunctive order, under

its broad discretion in a divorce action, to temporarily safeguard community property from encumbrance or transfer by one of the spouses *pending a final division.* Tex.Fam. Code Ann. § 3.58 (Vernon Supp.1982); *Wells v. Wells,* 539 S.W.2d 220, 222 (Tex. Civ.App.—Houston [1st Dist.] 1976, err dism'd); *Dickson, supra,* at 31; *Ex parte Butler,* 523 S.W.2d 309, 311 (Tex.Civ.App.— Houston [1st Dist.] 1975, no writ).

While a district court has constitutional and statutory authority to issue writs of injunction, Tex. Const. art. V., § 8; Tex.R.Civ.Pro. 693; Tex.Rev.Civ.Stat.Ann. art. 4642 (Vernon 1940), in general, a *permanent* injunction must not grant relief which is not prayed for, nor be more comprehensive or restrictive than justified by the pleadings, the evidence, and the usages of equity. 6 L. Lowe, *Remedies* § 244 (Texas Practice 1973). Unless there is specific statutory authorization for a writ of injunction, a showing of an absence of an adequate remedy at law is usually essential. *Id.* at § 113; *Durant Milling Co. v. Hall,* 284 S.W.2d 760, 765 (Tex.Civ.App.—Amarillo 1955, writ ref'd n.r.e.). An adequate remedy at law is a remedy which is as practical and efficient to the ends of justice and its prompt administration as is the remedy in equity. *McGonagill v. Hide-a-way Lake Club, Inc.,* 566 S.W.2d 371, 374 (Tex. Civ.App.—Tyler 1978, no writ); *King v. Miller,* 280 S.W.2d 331, 333 (Tex.Civ.App.— Eastland 1955, no writ).

We find no statutory authority for the issuance of this permanent injunction and no evidence in the record showing that appellee, armed with the judgment lien granted in the decree, does not have an adequate remedy at law. Accordingly, we conclude that the court did abuse its discretion in issuing this permanent injunction. Appellant's fourth point of error is sustained, and that paragraph of the decree which enjoins appellant from encumbering the property awarded him is ordered stricken.

The judgment is affirmed as modified.