**Opinion issued May 17, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-11-00126-CV

———————————

## RONALD C. TOLER, Appellant

## V.

## VICKY LYNN SANDERS, F/K/A VICKY TOLER, Appellee

**On Appeal from the 312th District Court**
**Harris County, Texas**
**Trial Court Case No. 2009-80785**

## O P I N I O N

After eleven years of marriage, Ronald C. Toler (Ron) and Vicky Lynn Sanders (Vicky) began divorce proceedings. They decided to resolve any conflicts relating to their division of community property with a mediator's assistance and entered into a mediated settlement agreement (MSA). *See* TEX. FAM. CODE ANN.

§ 6.602 (West 2006). After signing the MSA, however, Ron claimed that the writing did not reflect the parties' agreed division of the retirement benefits earned during the marriage. Ron fought to have the MSA set aside and to have the issue returned to the mediator, but the trial court entered judgment on the MSA and denied Ron's motion for new trial. In his appeal, Ron contends that the trial court erred in doing so because the MSA provision apportioning the retirement benefits contains an ambiguity and a mutual or unilateral mistake renders the provision unenforceable as written. Ron also contends that the trial court abused its discretion in awarding Vicky her attorney's fees for defending the MSA's enforcement in the post-judgment proceedings. Finding no error, we affirm.

## Background

Ron's main complaints concern the meaning of the MSA provision granting a portion of Ronald's retirement benefits to Vicky. That provision recites:

> Parties agree to award wife 50% of the community property of Ron's Rail Road Retirement benefits, with a stop date of September 27, 2010.

Documentation produced by Ron before mediation explains that his monthly railroad retirement benefits derive from two sources: (1) "Tier I," the railroad retirement benefit component," constituting about 57% of the total monthly benefit, and "Tier II," the "[d]ivisible railroad retirement benefit components," further described as "supplemental annuity, dual benefits," constituting about 43%

2

of the total monthly benefit.  A handwritten insertion adds "Retirement" to the provision, and both parties' handwritten initials appear at the bottom of the page.

The first page of the MSA recites in boldfaced print, "THIS AGREEMENT IS NOT SUBJECT TO REVOCATION, AND MEETS THE REQUIREMENTS OF SECTION 154.071, ~~TEXAS FAMILY CODE~~ TX CIVIL PRACTICE REMEDIES CODE [sic]."  This recital is followed by the divorcing spouse's initials and another boldfaced notice declaring "A PARTY TO THIS AGREEMENT IS ENTITLED TO JUDGMENT ON THIS MEDIATED SETTLEMENT AGREEMENT [sic]," again followed by the parties' initials. Following the text on the last page, the MSA states "APPROVED," followed by the parties' full signatures, as well as the signatures of the mediator and the parties' attorneys.

A week after the MSA's execution, Ron noticed that the provision did not reflect his understanding of the agreement.  The parties addressed this issue with the mediator but were unable to reach a resolution.  Before the final hearing for entry of the decree, Ron moved to set aside the MSA and refer the matter back to the mediator.  The trial court denied the motion, and Ron renewed his request to set aside the MSA and decree in a motion for new trial.  Vicky opposed the motion and requested that she be awarded $3,390 for attorney's fees and expenses incurred

3

in responding to the motion. The trial court denied the motion for new trial and awarded Vicky $1,500 for fees and expenses.

## Discussion

### *Mediated Settlement Agreement*

Relying on his own sworn statement recounting the events at mediation, Ronald maintains that the MSA provision at issue should have limited the award to his "Tier I Rail Road Retirement Benefits," and, because it does not, it results in a different, larger award than he intended.

Resolution of this issue turns on the nature of the MSA and its interpretation. Texas law provides divorcing spouses various ways to handle an agreed division of their community property. Section 7.006 of the Family Code prescribes one such method: it allows the parties to a execute settlement agreement that "may be revised or repudiated before rendition of the divorce" and that must be approved by the judge presiding over the divorce case. TEX. FAM. CODE ANN. § 7.006 (West 2006). Alternatively, divorcing spouses may choose to execute a settlement agreement that

    (1)    provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;

(2)     is signed by each party to the agreement; and

(3)     is signed by the party's attorney, if any, who is present at the time the agreement is signed.

TEX. FAM. CODE ANN. §§ 6.602(b), 6.603(d), 6.604(b), 153.0071(d) (West 2006). When the agreement complies with these three requirements, it "is binding on the parties" as soon as it is executed, and a party is "entitled to judgment on the agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law." TEX. FAM. CODE ANN. §§ 6.602(b(c), 6.603(d); 6.604(c), 153.0071(e); *Cayan v. Cayan*, 38 S.W.3d 161, 166 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *see In re Joyner*, 196 SW 3d 883, 890–91 (Tex. App.—Texarkana 2006, pet. denied) (noting that, by complying with requirements, "the parties elect to make their agreement binding at the time of execution rather than at the time of rendering, thus creating a procedural shortcut for the enforcement of those agreements"). The Family Code does not authorize a court to modify an MSA, to resolve ambiguities or otherwise, before incorporating it into a decree. *See* TEX. FAM. CODE ANN. § 6.604(9b)–(d); *see also Beyers v. Roberts*, 199 S.W.3d 354, 362 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (observing that trial court's modifications to settlement agreements are grounds for reversal where modifications "add terms, significantly alter the original terms, or undermine the intent of the parties"). A mediated settlement agreement under section 6.602 is "more binding than a basic written contract" because, except when a party has

5

procured the settlement through fraud or coercion, nothing either party does will modify or void the agreement "once everyone has signed it." *Joyner*, 196 S.W.3d at 888; *see Boyd v. Boyd* 67 S.W.3d 398, 404–05 (Tex. App.—Fort Worth 2002, no pet.) (upholding trial court's judgment setting aside MSA where husband failed to disclose substantial community assets); *see also Mullins v. Mullins*, 202 S.W.3d 869, 876 (Tex. App.—Dallas 2006, pet. denied) ("Unilateral withdrawal of consent does not negate the enforceability of a mediated settlement agreement in divorce proceedings.").

The MSA at issue in this case meets the requirements of section 6.602 of the Family Code. Mindful of the unique attributes the Family Code confers on the MSA, we apply contract principles to interpret its meaning. *Chapman v. Abbot*, 251 S.W.3d 612, 616 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *see Shanks v. Treadway*, 110 S.W.3d 444, 449 (Tex. 2003). We construe the entire writing in an effort to harmonize and give effect to the decree as a whole. *Shanks*, 110 S.W.3d at 447; *Chapman*, 251 S.W.3d at 616. We accord contract language its plain, grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated. *Chapman*, 251 S.W.3d at 616.

If the words used in the written instrument can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983);

*Chapman*, 251 S.W.3d at 616. Courts must enforce an unambiguous contract as written and may not consider extrinsic evidence, such as Ron's sworn statement, for the purpose of creating an ambiguity or giving the contract a meaning different from that which its language imports. *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008) (per curiam), *cited in Tellepsen Builders, L.P. v. Kendall/Heaton Assocs., Inc.*, 325 S.W.3d 692, 695 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *Dyer v. Cotton*, 333 S.W.3d 703, 718 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

### Ambiguity

Ronald contends that the trial court should have set aside the MSA because it is ambiguous. If a divorce decree's terms are ambiguous, the court may consider evidence in the record along with the decree to aid in its interpretation. *Chapman*, 251 S.W.3d at 617. A mere disagreement about the proper interpretation of an agreement, however, does not make an agreement ambiguous; the instrument is ambiguous only if, after application of the rules of construction, the agreement is reasonably susceptible to more than one meaning or if its meaning is uncertain or doubtful. *Id.*

The term "50% of the community property of Ron's Rail Road Retirement Benefits" is not reasonably susceptible to more than one meaning: it unambiguously entitles Vicky to that share of all of the retirement benefits earned for the specified period under the railroad retirement plan. Ronald clearly would have preferred to have limited Vicky's share to 50% of the Tier I benefits under the plan, but his urged construction does not emerge from the provision as written; to convey that meaning would require additional language that would substantively alter the provision's plain meaning. A party's request for an order altering or modifying a property division in a final decree constitutes an impermissible collateral attack. *See Hagen v. Hagen*, 282 S.W.3d 899, 902 (Tex. 2009). The trial court, therefore, properly denied Ron's request.

### *Mistake*

Ron also contends that the trial court should have set aside the MSA based on a mutual or unilateral mistake. Mutual mistake occurs when the parties to an agreement have a common intention, but the written instrument does not reflect that intent. *Dyer,* 333 S.W.3d at 718. Ron asserts "that the MSA does not reveal the intent of both parties," but absent from this assertion—and the record as a whole—is any showing that the mistake was mutual. Notably, Vicky nowhere indicated that she, too, meant to limit her share of Ron's railroad retirement benefits to the Tier I benefits. Ron's sworn statement concerning the events at

8

mediation, therefore, was not properly before the trial court. Under the parol evidence rule, courts may not consider extrinsic evidence that varies or contradicts the express or implied terms of the written agreement absent a showing of fraud, accident, or mutual mistake. *See id.*; *DeClaire v. G&B McIntosh Fam. Ltd. P'ship*, 260 S.W.3d 34, 45 (Tex. App.—Houston [1st Dist.] 2008, no. pet.).

In a footnote in his brief, Ron also alludes to the rule that a court may set aside a contract based on unilateral mistake if the party shows that (1) the mistake is of so great a consequence that to enforce the contract would be unconscionable; (2) the mistake relates to a material feature of the contract; (3) the mistake occurred despite ordinary care; and (4) setting aside the contract does not prejudice the other party except for the loss of the bargain. *See Ledig v. Duke Energy Corp.*, 193 S.W.3d 167, 175 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Ron, however, cannot make the required showing. "A party who signs a document is presumed to know its contents . . . ." *In re Lyon Fin'l Servs., Inc.*, 257 S.W.3d 228, 232 (Tex. 2007). Ron initialed the bottom of the page containing the retirement benefits provision—which has a handwritten revision—and signed off on the MSA as a whole. He cannot avoid the provision by alleging that he simply failed to notice it until after signing. *See In re U.S. Home Corp.*, 236 S.W.3d 761, 764 (Tex. 2007). Based on Ron's failure to adduce any proof of a mistake, the trial

9

court thus properly refused to consider Ron's extra-contractual statements in upholding the plain meaning of the MSA provision.

The language apportioning a share of Ron's railroad retirement benefits to Vicky is unambiguous, and Ron has not shown a mutual or unilateral mistake. We therefore hold that the trial court properly denied Ron's motion to set aside the MSA. For the same reasons, we further hold that the trial court was entitled to construe the MSA as a matter of law and thus did not err by denying Ron's request to refer this dispute to the mediator.[1]

### Attorney's fees award

Ron complains that the trial court abused its discretion in awarding Vicky her attorney's fees on the basis the trial court's underlying decision on the merits is erroneous. Because we have upheld the trial court's ruling, this complaint lacks merit, and Ron does not advance any other ground for reversing the attorney's fee award. As a result, we leave the attorney's fee award undisturbed.

---

[1] Ron points to language in the MSA that, according to his reading, required that the trial court refer the dispute to the mediator for resolution. *See Milner v. Milner*, 361 S.W.3d 615, 622 (Tex. 2010). The record shows the mediator already attempted to assist the parties in resolving this dispute, but does not contain any document from the mediator following that attempt. We do not agree that the language he relies on requires the trial court to refer every dispute over the MSA's interpretation to the mediator. This case differs from *Milner* in that the challenged language is unambiguous, and in that the mediator did not resolve the dispute when presented with it.

## Conclusion

We hold that the trial court did not err in denying Ronald Toler's motion for new trial or in awarding Vicky Sanders her attorney's fees. We therefore affirm the judgment of the trial court.


        Jane Bland
        Justice

Panel consists of Justices Keyes, Bland, and Sharp. Justice Sharp concurs in the judgment only.