# NO. 12-20-00105-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE MATTER OF THE MARRIAGE OF CRAIG JOBE AND SHIRLEY JEAN JOBE AND IN THE INTEREST OF M.J., N.J., N.J, M.J. AND A.J., CHILDREN* | *§*<br>*§*<br>*§* | *APPEAL FROM THE*<br>*COUNTY COURT AT LAW*<br>*CHEROKEE COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Craig Evan Jobe appeals the trial court's award of attorney's fees against him and in favor of Appellee Shirley Jean Jobe. In a single issue, Craig argues that the trial court abused its discretion in awarding attorney's fees under the Texas Family Code because the award was made in contravention of the parties' mediated settlement agreement (MSA), under which they agreed to bear responsibility for their own attorney's fees. We affirm.

## BACKGROUND

Craig and Shirley were married on July 2, 1992. On August 16, 2016, Shirley filed her Original Petition for Divorce, in which she alleged cruel treatment that rendered the couple's living together unsupportable. She also requested that the trial court award her attorney's fees.

On or about June 4, 2018, the parties entered into two mediated settlement agreements— one of which concerned "Property, Child Support, Insurance and Contractual Alimony and Issues on Protective Order" (the Property MSA), and the other of which related to Temporary Orders for the children (the SAPCR MSA).[1] The Property MSA specifically sets forth in its title that it only pertains to Property, Child Support, Insurance and Contractual Alimony (Maintenance) and Issues

---

[1] The SAPCR MSA did not dispose of all the claims underlying the suit affecting the parent-child relationship (SAPCR).

1

on Protective Orders. Furthermore, in the section labeled "Debts," the parties agreed that each of them shall be responsible for paying their own attorney's fees.

On August 28, 2018, Craig's counsel notified Shirley's counsel by email that Craig failed to disclose the existence of his EOG 401(k) retirement account prior to the execution of the Property MSA. In so doing, Craig's counsel took the position that the account was covered by the Property MSA and, as a result, Craig was entitled to the entirety of the funds in the account.

On March 18, 2019, Craig filed his First Amended Counter-Petition in which he alleged the fault ground of cruelty and no-fault ground of insupportability. He also requested that if an agreement was not reached on the division of the marital estate, that the trial court divide the estate in a manner that is just and right, that he be appointed sole managing conservator of the children, that Shirley be ordered to pay child support, and that he be awarded attorney's fees.

The matter proceeded to a jury trial. At the outset of the proceedings, the parties reached an agreement regarding all matters other than the division of the undisclosed 401(k) and, as announced by Craig's counsel, each party's cross requests for attorney's fees. The parties expressly agreed on the record that the trial court would resolve those issues.

During the ensuing bench trial, Shirley's counsel testified about the attorney's fees incurred by her client. Specifically, she testified that Shirley incurred $58,394.00 in attorney's fees since June 4, 2018, the date of mediation, and that those fees were incurred in her client's prosecution of the division of the undivided property and in the SAPCR action. She further testified that Shirley would incur an additional $5,000.00 through the finalization of the divorce. Craig did not object to any of Shirley's counsel's testimony or the exhibits offered during her testimony. After the conclusion of Shirley's counsel's testimony, Craig made a Motion for Judgment as a Matter of Law, in which he argued that the Property MSA precluded the award of attorney's fees. The trial court overruled Craig's motion but indicated that it would take the matter under advisement.

On April 29, 2019, the trial court issued a letter ruling, in which it found that attorney's fees incurred from and after the date of the June 4, 2018 Property MSA could be considered and awarded by the court pursuant to Texas Family Code, Sections 6.708, 9.106, 9.205, and 106.002. The trial court also reiterated this ruling in its First Amended Findings of Fact and Conclusions of Law. Ultimately, the trial court rendered judgment awarding Shirley $60,585.00 for reasonable and necessary attorney's fees against Craig. This appeal followed.

**AWARD OF ATTORNEY'S FEES AND MEDIATED SETTLEMENT AGREEMENT**

In his sole issue, Craig argues that the trial court erred in awarding Shirley attorney's fees because such an award (1) is not supported by the pleadings and was not tried by consent and (2) contravened the terms of the Property MSA, which could not be set aside. He also argues that the trial court erred in entering a decree awarding a lien against Appellant because such a lien was neither pleaded nor tried by consent.

## Standard of Review

We review a trial court's award of attorney's fees for an abuse of discretion. *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 850 (Tex. 2018). Under this standard of review, a judgment awarding attorney's fees can "be affirmed on any theory of law applicable to the case and supported by the record." *Interest of Z.O.M.*, 613 S.W.3d 638, 642 (Tex. App.–San Antonio 2020, no pet.).

We review a trial court's conclusions of law de novo as legal questions. *Boyd v. Boyd*, 67 S.W.3d 398, 404 (Tex. App.–Fort Worth 2002, no pet.); *Hitzelberger v. Samedan Oil Corp.*, 948 S.W.2d 497, 503 (Tex. App.–Waco 1997, pet. denied). Conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Boyd*, 67 S.W.3d at 404; *State Bar v. Leighton*, 956 S.W.2d 667, 671 (Tex. App.–San Antonio 1997) (op. on reh'g), *pet. denied*, 964 S.W.2d 944 (Tex. 1998). Incorrect conclusions do not require a reversal if the controlling findings of fact will support a correct legal theory. *Hitzelberger*, 948 S.W.2d at 503.

## Governing Law

To resolve Craig's sole issue, we first must interpret the relevant provisions in the Property MSA.

### *Mediated Settlement Agreements under the Family Code*

Texas law provides divorcing spouses various ways to handle an agreed division of their community property. For instance, Texas Family Code, Section 7.006 allows the parties to execute a settlement agreement which "may be revised or repudiated before rendition of the divorce" and which must be approved by the presiding judge. TEX. FAM. CODE ANN. § 7.006 (West 2020). Alternatively, divorcing spouses may choose to execute a settlement agreement which

(1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;

(2) is signed by each party to the agreement; and

(3) is signed by the party's attorney, if any, who is present at the time the agreement is signed.

*Id*. §§ 6.602(b), 6.604(b) (West 2020), 153.0071(d) (West 2014). When the agreement complies with these three requirements, it "is binding on the parties" as soon as it is executed, and a party is "entitled to judgment on the agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law." *Id*. §§ 6.602(b), (c), 6.604(c), 153.0071(e); ***Cayan v. Cayan***, 38 S.W.3d 161, 166 (Tex. App.–Houston [14th Dist.] 2000, pet. denied); *see **In re Joyner***, 196 S.W.3d 883, 890–91 (Tex. App.–Texarkana 2006, pet. denied) (noting that, by complying with requirements, "the parties elect to make their agreement binding at the time of execution rather than at the time of rendering, thus creating a procedural shortcut for the enforcement of those agreements"). The Texas Family Code does not authorize a court to modify a mediated settlement agreement, either to resolve ambiguities or otherwise, before incorporating it into a decree. ***Toler v. Sanders***, 371 S.W.3d 477, 480 (Tex. App.–Houston [1st Dist.] 2012, no pet.) (trial court's modifications to settlement agreements are grounds for reversal where modifications "add terms, significantly alter the original terms, or undermine the intent of the parties"). An MSA under Section 6.602 is "more binding than a basic written contract" because, except when a party has procured the settlement through fraud or coercion, nothing either party does will modify or void the agreement "once everyone has signed it." ***Joyner***, 196 S.W.3d at 888; *see **Boyd***, 67 S.W.3d at 404–05 (upholding trial court's judgment setting aside MSA where husband failed to disclose substantial community assets); *see also **Mullins v. Mullins***, 202 S.W.3d 869, 876 (Tex. App.–Dallas 2006, pet. denied) ("Unilateral withdrawal of consent does not negate the enforceability of a mediated settlement agreement in divorce proceedings").

### *Interpretation of Mediated Settlement Agreements*

The Property MSA meets the requirements of Section 6.602. While remaining mindful of the unique attributes the Family Code confers on the MSA, we apply contract principles to interpret its meaning. *See **Chapman v. Abbot***, 251 S.W.3d 612, 616 (Tex. App.–Houston [1st Dist.] 2007, no pet.); *see also **Shanks v. Treadway***, 110 S.W.3d 444, 449 (Tex. 2003).

Here, the parties present conflicting interpretations of the attorney's fees clause in the Property MSA, but neither party presently contends that the clause is ambiguous. But the parties'

4

failure to raise the issue of a contract's ambiguity is not determinative. *See Milner v. Milner*, 361 S.W.3d 615, 619 (Tex. 2012); *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983). Further, a contract is not ambiguous merely because the parties disagree about its meaning and may be ambiguous even though the parties agree it is not. *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 763 (Tex. 2018). Both the presence of ambiguity and interpretation of an unambiguous contract are questions of law we review de novo using well-settled contract construction principles. *Id.*

When a contract's meaning is disputed, our primary objective is to ascertain and give effect to the parties' intent as expressed in the instrument. *Id.* Objective manifestations of intent control, not "what one side or the other alleges they intended to say but did not." *Id.* at 763–64. We therefore "presume parties intend what the words of their contract say" and interpret contractual language according to its "plain, ordinary, and generally accepted meaning" unless the instrument directs otherwise. *Id.* at 764.

We construe the entire writing in an effort to harmonize and give effect to the decree as a whole. *Shanks*, 110 S.W.3d at 447; *Chapman*, 251 S.W.3d at 616. We accord contractual language its plain, grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated. *Chapman*, 251 S.W.3d at 616.

If the words used[2] in the written instrument can be given a certain or definite legal meaning or interpretation, then the contract is not ambiguous and we will construe it as a matter of law. *Coker*, 650 S.W.2d at 393; *Chapman*, 251 S.W.3d at 616. Courts may not consider extrinsic evidence for the purpose of creating an ambiguity or giving a contract a meaning different from that which its language imports. *See David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008); *Toler*, 371 S.W.3d at 481; *Tellepsen Builders, L.P. v. Kendall/Heaton Assocs., Inc.*, 325 S.W.3d 692, 695 (Tex. App.–Houston [1st Dist.] 2010, pet. denied); *Dyer v. Cotton*, 333 S.W.3d 703, 718 (Tex. App.–Houston [1st Dist.] 2010, no pet.).

But if the agreement is susceptible to more than one reasonable interpretation, the agreement is ambiguous, creating a fact issue with regard to the parties' intent. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). Only where a contract is first determined to

---

[2] We are cognizant that words are simply implements of communication, and imperfect ones at that. *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 764 (Tex. 2018). Oftentimes they cannot be assigned a rigid meaning, inherent in themselves. *Id.* Rather, their meaning turns upon use, adaptation and context as they are employed to fit various and varying situations. *Id.* Even a single word can carry subtle—and significant—differences in meaning when applied to different situations. *Id.*

be ambiguous may the court consider the parties' interpretations and admit extraneous evidence to determine the true meaning of the instrument. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). An ambiguity in a contract may be said to be "patent" or "latent." *Id.* A patent ambiguity is evident on the face of the contract. *Id.* A latent ambiguity arises when a contract which is unambiguous on its face is applied to the subject matter with which it deals and an ambiguity appears by reason of some collateral matter. *Id.* If a latent ambiguity arises from this application, parol evidence is admissible for the purpose of ascertaining the true intention of the parties as expressed in the agreement. *Id.*

**Ambiguity**

In the instant case, the Property MSA plainly states, "Each party to pay their own attorney's fees." But we remain mindful that we must construe this statement in the context of the entire writing in an effort to harmonize and give effect to the decree as a whole. *See Shanks*, 110 S.W.3d at 447; *Chapman*, 251 S.W.3d at 616. Here, the attorney's fees clause is contained within an agreement in the parties' divorce proceedings expressly applicable to "Property, Child Support, Insurance and Contractual Alimony (Maintenance), and Issues on [a] Protective Order." The caption on the agreement explicitly sets forth that the suit also involves the five children of the marriage. Thus, it is apparent from the agreement and its stated terms that it resolves some issues in the proceedings, i.e., disposition of property, but not all matters, such as SAPCR issues, including conservatorship and possession of the children. The language at issue is broad, but because the scope of the Property MSA is expressly limited in its title, the breadth of the language in the attorney's fees clause is not conclusive on the question of whether the parties intended it to apply (1) only to attorney's fees incurred in resolving the issues that were covered by the stated subject matter of the Property MSA or (2) only to attorney's fees incurred in resolving the issues expressly resolved by the Property MSA.[3] No other language in the agreement is helpful in our determining the parties' intent with regard to this clause. Thus, while the language of the attorney's fees clause is not patently ambiguous, when it is considered in conjunction with the scope of the issues in the cause of action as expressed in the caption of the agreement and the stated subject

---

[3] Craig's argument that the clause should be interpreted to apply to attorney's fees incurred in the cause of action as a whole is untenable. Because the Property MSA does not resolve all of the issues in this case, even if we determine that the attorney's fees clause is ambiguous with respect to attorney's fees incurred in determining unresolved property issues, we cannot devise any reasonable interpretation of the Property MSA which would apply the attorney's fees clause to non-property issues.

matter of the Property MSA, its latent ambiguity is apparent. *See CBI Indus., Inc.*, 907 S.W.2d 520. Accordingly, we may consider the parol evidence presented to the trial court to determine whether the trial court's conclusion of law that Shirley should be awarded attorney's fees was appropriate under the law and made in accordance with the Property MSA. *See Boyd*, 67 S.W.3d at 404.

## Determination of Parties' Intent with Extraneous Evidence

We next look to the extraneous evidence and the parties' interpretation of the attorney's fees clause, including their respective trial counsel's actions undertaken during the subsequent proceedings as well as their representations to the trial court, to determine whether the trial court's conclusion of law regarding the award of attorney's fees should be upheld. *See EMC Mortg. Corp. v. Davis*, 167 S.W.3d 406, 413 (Tex. App.–Austin 2005, pet. denied) (court may consider parties' interpretations of contract in determining true meaning). The trial court's letter ruling states, in pertinent part, as follows:

> The court finds that the issue of attorney's fees as set forth in the MSA Concerning Property, Child Support, Insurance, Contractual Alimony, and issues on the Protective Order dated June 4, 2018[,] is binding on the parties as of that date as to the specified issues only.
>
> Accordingly, the attorney's fees incurred by the parties prior to June 4, 2018, shall be paid by the party incurring same, in accordance with the express terms of the MSA. However, attorney's fees incurred from and after June 4, 2018, on the remaining issues can be considered by the Court pursuant to Sections 106.002, 9.106, 6.708[,] 9.205 of the Texas Family Code. As a part of the division of the community property estate, the Court hereby awards to Mrs. Jobe a judgment against Mr. Jobe in the sum of $60,585.00 for reasonable and necessary attorney's fees incurred by her in this cause . . . .

In support of this ruling, the trial court made the following, pertinent findings of fact:[4]

> • On April 24, 2019, the parties entered into an agreement regarding all pending issues before the Court, save and except the issues regarding payment of Attorney Fees and how the EOG Resources 401(k) would be awarded/disbursed. The parties further agreed that the Court would rule on those issues . . . .
>
> • On April 25, 2019, a hearing on the retirement funds and attorney fees issues was held before Judge Janice Stone. Judge Stone heard testimony from the parties and reviewed documents as introduced into evidence.

---

[4] Regardless of the label, the trial court's designation of a finding of fact or conclusion of law is not controlling on appeal. *Ray v. Farmers' State Bank of Hart*, 576 S.W.2d 607, 608 n.1 (Tex. 1979). Conclusions which, in fact, are findings will be treated as findings, and vice versa. *See Banker v. Banker*, 517 S.W.3d 863, 870 (Tex. App.–Corpus Christi 2017, pet. denied).

7

• On April 24, 2019, the Petitioner and Respondent entered into an agreement (the agreement was placed on the record) that the parties request that the Court rule on two issues: 1. 401(k) Funds: The Court was to determine how the EOG Resource 401(k) would be awarded/disbursed to the parties. 2. Attorney Fees: The Court was to determine if attorney fees would be awarded to either party and how those funds would be disbursed. The Court granted such request of the parties and provided a Written Ruling to the Attorneys of Record . . . .

• On April 24, 2019, [Shirley's counsel] stated on the record, "And, then, finally, all attorney's fees and costs issues will be submitted to the Court for the Court's ruling on Thursday as well." [Craig's Counsel] was in agreement for the Court to rule on the attorney fees and costs issue and the division of funds for the EOG Resources 401(k), [Craig's counsel] did not state any objection on the record.

• [Shirley's Counsel] further stated on the record, "So when we come here on tomorrow afternoon[,] the only issues remaining before the Court are attorney's fees and expenses and a 401(k) that has to be divided." [Craig's Counsel] had no objection.

• The divorce was proved up before the Court[,] at which time the Court stated, "All right, Okay, after having heard the testimony, the Court approves and accepts the Rule 11 Agreement as read into the record. Judgment is hereby rendered on that Rule 11 Agreement. The Court finds that it does have jurisdiction of this matter. The Court will hold off on granting the divorce until we have the hearing tomorrow, which will - - which should settle all the remaining issues in the case. Because you've already proved it up, you obviously will not have to do that again tomorrow. The only thing I'll hear tomorrow are the property issues on the 401(k) and the attorney's fees; correct? At which time [Craig's Counsel] stated, "Correct."

Based on our review of the record, we conclude that the aforementioned findings of fact are supported by the evidence. Accordingly, we further conclude that, based on these findings, the trial court's judgment awarding Shirley attorney's fees can be sustained on a competent legal theory, i.e., the attorney's fees clause is ambiguous as to its scope, and the pleadings, evidence, actions, inactions, and representations of the parties by and through their attorneys indicate that the attorney's fees clause in the Property MSA applied only to fees related to the property divisions that were, in fact, resolved by the Property MSA. *See **Boyd***, 67 S.W.3d at 404; *see also **CBI Indus., Inc.***, 907 S.W.2d at 520; ***Davis***, 167 S.W.3d at 413. Thus, the trial court reasonably could find that recovery of attorney's fees related to the resolution of the division of the EOG Resources 401(k) and SAPCR issues is not governed by the Property MSA. Therefore, we hold that the trial court's award of attorney's fees did not modify the Property MSA by adding terms, significantly altering the original terms, or otherwise undermining the parties' intent. *See, e.g.*, ***Sanders***, 371 S.W.3d at 480.

**Pleadings Must Support Award of Attorney's Fees**

We next consider Craig's argument that Shirley's pleadings fail to support the trial court's award of attorney's fees. In a suit for dissolution of a marriage, the court may award reasonable

attorney's fees and expenses. TEX. FAM. CODE ANN. § 6.708 (West 2020); *see also id.* §§ 9.106, 9.205 (West 2020), 106.002 (West 2019). To be entitled to a discretionary award of attorney's fees in a divorce proceeding, a party must file with the court an affirmative pleading requesting them unless the issue is waived or tried by consent. *See Tull v. Tull*, 159 S.W.3d 758, 762 (Tex. App.–Dallas 2005, no pet.) (pleading for attorney's fees in SAPCR case); *see also Kirk v. Kirk*, 805 S.W.2d 929, 932 (Tex. App.—Fort Worth 1991, writ dism'd) (pleading for attorney's fees in property division case). Pleadings are to be liberally construed in favor of the pleader, particularly when the complaining party has not filed any special exceptions. *Tull*, 159 S.W.3d at 762; *Lohmann v. Lohmann*, 62 S.W.3d 875, 880–81 (Tex. App.–El Paso 2001, no pet.). The purpose of the pleading is to give notice of the claim involved. *In re Pecht*, 874 S.W.2d 797, 804 (Tex. App.–Texarkana 1994, no writ). A general request for attorney's fees in the prayer of the pleading is itself sufficient to authorize the award of attorney's fees. *See Morgan v. Morgan*, 657 S.W.2d 484, 491 (Tex. App.–Houston [1st Dist.] 1983, writ dism'd) (attorney's fees award affirmed where pleading specifically requested award of attorney's fees for previous attorney and prayer included general request for attorney's fees); *see also Kirk*, 805 S.W.2d at 932 (citing *Morgan* 657 S.W.2d at 491) (pleadings requested attorney's fees payable to petitioner's attorney as well as general relief; prayer for general relief alone would have been sufficient to authorize award of attorney's fees directly to attorney).

In the instant case, paragraph 20 of Shirley's original petition for divorce states as follows:

20.      *Attorney's Fees, Expenses, Costs, and Interest*

It was necessary for Petitioner to secure the services of Alicia Barkley, a licensed attorney, to prepare and prosecute this suit. To effect an equitable division of the estate of the parties and as a part of the division, and for services rendered in connection with conservatorship and support of the children, judgment for attorney's fees, expenses, and costs through trial and appeal should be granted against Respondent and in favor of Petitioner for the use and benefit of Petitioner's attorney and be ordered paid directly to Petitioner's attorney, who may enforce the judgment in the attorney's own name. Petitioner requests postjudgment interest as allowed by law.

This language is repeated verbatim in both Shirley's First and Second Amended Original Petitions for Divorce. Because Shirley unequivocally gave notice of her claim for attorney's fees, we

conclude that the trial court's award of attorney's fees is supported by the pleadings. *In re Pecht*, 874 S.W.2d at 804.[5]

## Equitable Lien

Craig further argues that the trial court erred in entering a decree granting an equitable lien against him because such a lien neither was pleaded nor tried by consent. The record reflects that on January 10, 2020, Craig filed a motion for new trial, in which he objected to, among other things, the inclusion of the lien language in the decree. On February 14, 2019, the trial court granted Craig's motion for new trial in part and signed the First Amended Final Decree of Divorce on March 6, 2020, which does not contain language creating a lien. Thus, Craig's argument on appeal about the propriety of such a lien is unwarranted.

## Summation

We have concluded that the trial court's award of attorney's fees to Shirley does not contradict or alter the terms of the Property MSA and is supported by Shirley's pleadings. Therefore, we hold that the trial court did not abuse its discretion by awarding these fees. Craig's sole issue is overruled.

### DISPOSITION

Having overruled Craig's sole issue, we *affirm* the trial court's judgment.

BRIAN HOYLE
Justice

Opinion delivered October 6, 2021.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

---

[5] Because we conclude that the trial court's attorney's fees award is supported by the pleadings, we do not consider Craig's argument that the matter of attorney's fees was not tried by consent. *See* TEX. R. APP. P. 47.1.

10



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**OCTOBER 6, 2021**

**NO. 12-20-00105-CV**

**IN THE MATTER OF THE MARRIAGE OF CRAIG JOBE
AND SHIRLEY JEAN JOBE AND IN THE INTEREST OF
M.J., N.J., N.J, M.J. AND A.J., CHILDREN**

Appeal from the County Court at Law

of Cherokee County, Texas (Tr.Ct.No. 2016-08-0544)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, all costs of this appeal are assessed against the Appellant, **CRAIG JOBE**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*