

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-11-00816-CV

**IN THE INTEREST OF S.O.L.**

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CI-14491
Honorable Antonia Arteaga, Judge Presiding

Opinion by:     Steven C. Hilbig, Justice

Sitting:        Karen Angelini, Justice
                Steven C. Hilbig, Justice
                Marialyn Barnard, Justice

Delivered and Filed:  December 28, 2012

REVERSED AND REMANDED

The parties signed a mediated agreement and the trial court rendered a final Order in Suit Affecting the Parent-Child Relationship based on the agreement. The child's paternal grandmother appeals that order, contending that the agreement was only as to temporary orders or was ambiguous in that regard and that the court erred in denying her a jury trial and granting final judgment. We reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

S.O.L.[1]  was born May 19, 2004, and lived with his parents, Russell L. and Morgan V. When S.O.L. was six months old, he and his parents moved into the home of his paternal

---

[1] To protect the identity of the minor child, we refer to the child by his initials and the other parties by their first names. *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2012).

grandmother, appellant Linda L. Russell and Morgan separated when S.O.L. was 11 months old, and in December 2005, Morgan and S.O.L. began living with Morgan's new boyfriend.

Morgan's new boyfriend physically abused S.O.L. The abuse was exposed in July 2006, when Morgan took S.O.L. to the hospital with a broken femur and he was hospitalized for three days. An investigation by Child Protective Services concluded that S.O.L. had been abused by Morgan's boyfriend over a period of time and included the broken femur, a broken tibia which went untreated, food deprivation which caused malnutrition, fifty-seven burns and bruises on various parts of his body, and verbal abuse. The boyfriend was eventually convicted and sentenced to ten years in prison. Morgan was never arrested or charged in connection with the abuse.

CPS removed S.O.L. from Morgan's home and placed him with Morgan's mother and step-father, Virginia R. and Jack R. Morgan did not provide CPS contact information for Linda or Russell and did not tell CPS that S.O.L. had previously lived with Linda. About six weeks after S.O.L. was placed with Virginia, Russell and Linda first learned of the abuse of S.O.L. from CPS personnel.

In September 2006, Virginia and Jack filed a petition requesting to be appointed S.O.L.'s sole managing conservators and that Morgan and Russell be denied access to the child. Nine days later, Linda filed a petition in intervention requesting she be appointed sole managing conservator of S.O.L. and that Morgan and Russell be denied access to the child. The trial court signed temporary orders appointing Virginia and Jack temporary sole managing conservators of S.O.L., declaring that Morgan and Russell "not have possession of or access to the child at the present time," and requiring mediation before setting a hearing for modification of custody, possession, or support. Russell later also filed a petition requesting that he be appointed sole managing conservator of S.O.L.

On November 2, 2007, the trial court modified the temporary orders, naming Linda and Virginia temporary joint managing conservators, giving Linda the exclusive right to designate S.O.L.'s primary residence within the State of Texas, and giving Virginia a standard possession order. Although Russell and Morgan were named temporary possessory conservators, the order gave Russell "supervised visitation as allowed by Linda" and did not provide for any visitation by Morgan.

After a child custody evaluation was completed and filed in November 2008, the parties mediated. On November 25, 2008, the parties signed a mediation agreement. The agreement is handwritten on a pre-printed form. The pre-printed portion states in part that the parties agree to "settle the claims and controversies between them including all conservatorship, child support, and disputes regarding the above identified children of the marriage, . . . [and] [t]he parties stipulate that the agreements set forth hereinafter are in the children's best interest, constitute a fair and just division of all community property and liabilities, and agree that such issues are resolved." It also states:

**THIS AGREEMENT IS NOT SUBJECT TO REVOCATION. THIS AGREEMENT MEETS THE REQUIREMENTS OF SECTION 153.007(d) OF TEXAS FAMILY CODE.**

**A PARTY TO THIS AGREEMENT IS ENTITLED TO JUDGMENT OF THIS MEDIATED SETTLEMENT AGREEMENT.**

The following four pages of the agreement consist of fourteen handwritten and numbered provisions, including the following:[2]

> (1) All parties Temporary Joint Managing Conservators with rights per temporary order of Nov 2, 2007.
>
> . . .

---

[2] These handwritten excerpts from the mediated settlement agreement are reproduced here as close in appearance to the original as possible with all abbreviations, deletions, misspellings.

(3)  For completion of current school year— [S.O.L.] to attend [specified schools] . . . .

(4)  Periods of Access
        (A) [Virginia's periods of possession stated] Morgan may attend all visits

        (B)  [Linda's weekend possession stated] Russell may be supervised by Linda, . . . at all times.

        (C)  Russell – one weekend of each month Friday – Sunday to be supervised by Linda, . . .

        (D) Tuesdays 6-8 @ McDonalds 1604 & Blanco for Morgan beg 12-2-08 & if Morgan does not attend — no visit. [Virginia] may also attend w/ Morgan

Holidays . . .

*  ~~Goal is to reunite Morgan & … [S.O.L.]~~
Goal is for parents to become primary conservators.

5.  Dr. Murphy as [S.O.L.'s] therapist to give input to Cornelia Beach as parent co-ordinator to monitor Russell & Morgan and [S.O.L.] to overnight for either or both parents w/o supervision as recommended by Cornelia Beach.  C. Beach to consult w/ Dr. Murphy before recommendation in changes in possession. . . .

John Specia to resolve any possession & access disputes as arbitrator & cost to be determined by John Specia. …

6.  Trial date of Dec. 2009 & ~~Jury Waived~~.

7.  Morgan and Russell to complete any parenting classes needed by either parent as recommended by Cornelia Beach.

. . .

9.  C/S to be day care during T.O. & Russell to continue to pay arrearage — amount to be confirmed.

. . .

12. Cornelia Beach role as parenting coordinator is to make recommendations regarding Russell & Morgans periods of possession & access by the parties

13. Morgan must substantially complete specific periods of possession to matriculate to overnight pursuant to Cornelia Beach's recommendations.

Additional handwritten provisions provided details regarding access and possession, and for payment for counseling and health insurance. The top of the final page provides this printed language: "**R. NOT SUBJECT TO REVOCATION, THIS AGREEMENT IS BINDING ON THE PARTIES AND IS NOT SUBJECT TO REVOCATION. THIS AGREEMENT MEETS THE REQUIREMENTS OF SECTION 151.007(d), TEXAS FAMILY CODE.**" The agreement was dated and signed by Morgan, Russell, Virginia, Linda, attorneys for each party represented by counsel at the time, and the mediator.

In March 2009, Virginia sought additional temporary orders to incorporate the provisions of the mediated agreement. The parties filed several Rule 11 agreements, which are not in the appellate record, and the hearing on Virginia's motion was dropped. Thereafter, an arbitration was conducted, resulting in a letter award dated June 23, 2009 and a June 25 letter revising the original award.[3] The record indicates no other activity in the case until the latter part of 2011, when the case was set for an October 17, 2011 jury trial.

When the parties appeared for trial, Morgan filed a request to enforce the mediation agreement or to limit the trial to matters after the date of the mediation. She argued that a final judgment should be rendered on the mediated agreement without trial because custody had been decided in the mediated agreement, with the only remaining question being the transition of custody to Morgan. Linda, acting pro se, argued that the agreement called for a jury trial to determine conservatorship and that the goal of the transition schedule was to reunite both parents with S.O.L., not just Morgan. The trial court concluded that the mediated agreement and the arbitration letters controlled the issues in the case and that no trial on conservatorship was

---

[3] Neither arbitration letter is in the record, but the parties do not dispute that the letters granted Morgan overnight and unsupervised visits with S.O.L. in her home, specified steps Morgan was required to take to earn additional visitation, and modified Virginia's visitation with S.O.L.

necessary. The court ruled that the only matter not settled by the mediated agreement was the transition schedule, which is a matter within the trial court's discretion. The trial court appointed an amicus attorney, ordered the parties to immediately provide the amicus with relevant information, and reset the matter for a hearing to decide the transition schedule. On November 16, 2011, the trial court signed the final Order in Suit Affecting the Parent-Child Relationship naming Morgan, Russell, and Linda joint managing conservators of S.O.L., with a transition schedule from Linda to Morgan as primary conservator to be completed by January 30, 2012. The order further contained extensive provisions regarding possession, counseling, and child support. Linda appeals that order.

## DISCUSSION

Linda asserts the trial court erred by denying her a jury trial because the mediated agreement was intended to be only an agreement for temporary orders pending final trial or it is ambiguous as to whether the parties intended to agree on temporary or final orders. She contends that in either event, a jury question was presented and she was denied due process and a trial by jury on the issue of conservatorship.

The mediated agreement satisfied the requirements of section 153.0071(d) of the Family Code. *See* TEX. FAM. CODE ANN. § 153.0071 (West 2008); *see also Garcia–Udall v. Udall*, 141 S.W.3d 323, 331 (Tex. App.—Dallas 2004, no pet.) (Family Code section 153.007 does not apply to mediated settlement agreements under section 153.0071). Accordingly, the agreement is binding and irrevocable, and a party is entitled to a judgment that conforms to the agreement, "notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law." TEX. FAM. CODE ANN. § 153.0071(e); *see Milner v. Milner*, 361 S.W.3d 615, 618 (Tex. 2012) (applying section 6.620 of the Family Code). A trial court does not have authority to render a judgment that varies from the terms of a mediated settlement agreement. *Garcia–Udall*, 141 S.W.3d at

331-32. However, in this case the parties disagree as to the proper interpretation of the agreement. Linda contends the agreement was intended to be temporary and to govern until a jury trial was held on the issue of conservatorship. Morgan contends the agreement was intended to resolve all issues in the case.

Contract principles apply to the interpretation of a mediated settlement agreement. *See Toler v. Sanders*, 371 S.W.3d 477, 480 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Whether the contract is ambiguous is a question of law we review de novo. *Milner*, 361 S.W.3d at 619; *Bowden v. Phillips Petroleum Co.*, 247 S.W.3d 690, 705 (Tex. 2008). If the agreement can be given a certain and definite meaning, it is not ambiguous and its construction is a question of law for the court. *Milner*, 361 S.W.3d at 619; *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011). When interpreting a contract, the court's primary concern is to ascertain and give effect to the intent of the parties as expressed in the contract. *In re Service Corp. Intern.*, 355 S.W.3d 655, 661 (Tex. 2011). We examine the entire agreement and give effect to each provision so that none is rendered meaningless. *Tawes*, 340 S.W.3d at 425; *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006).

We conclude the mediated settlement agreement is unambiguous and was intended to apply only to temporary orders pending a final trial. The parties agreed to a "goal" — that Morgan and Russell become S.O.L.'s primary conservators. The parties also agreed to a process towards meeting the goal and provided that S.O.L.'s therapist and the parent coordinator would monitor and oversee that process. However, the document does not contain an agreement stipulating that the goal would be met at a date certain or providing that someone other than a jury would determine whether sufficient progress had been made such that it would be in S.O.L.'s best interest for his parents to be his primary conservators. Rather, the parties agreed to a trial date and agreed that in the interim they would be "temporary" joint managing

conservators, and agreed to child support during the "T.O." [temporary order]. These provisions indicate that the mediated settlement agreement was not intended to conclude the litigation among the parties.

Considering the mediated settlement agreement in light of the applicable contract principles, we hold the agreement was intended to apply to temporary orders and that it was not ambiguous in that regard. The trial court erred by rendering a final order and denying Linda a trial on the issue of conservatorship. *See In re T.R.B.*, 350 S.W.3d 227, 231-32 (Tex. App.—San Antonio 2011, no pet.) (section 105.002 of Family Code provides party is entitled to verdict by jury and court may not contravene jury verdict on certain conservatorship issues) (citing TEX. FAM. CODE ANN. § 105.002 (West 2008)). We reverse and remand this cause for further proceedings.

Steven C. Hilbig, Justice