**Affirmed in Part, Reversed and Remanded in Part, and Memorandum Opinion filed July 11, 2013.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-11-00854-CV

---

### TIFFANY DIGGS, Appellant

### V.

### RANDOLPH DIGGS, JR., Appellee

---

**On Appeal from the 246th District Court
Harris County, Texas
Trial Court Cause No. 2009-81634**

---

## M E M O R A N D U M   O P I N I O N

Appellant Tiffany Diggs challenges the portion of the Final Decree of Divorce pertaining to the division of the marital estate. She and appellee, Randolph Diggs, Jr. ("Randy"), entered into a mediated settlement agreement (the "MSA") dividing their property. In five issues, she challenges the enforceability of the MSA by asserting (1) it was procured with the use of an unqualified mediator, (2) the trial court erred by refusing to permit Tiffany to present evidence tha the

mediator was disqualified at the hearing on her motion for new trial, (3) the trial court signed the divorce decree when the MSA was never made a part of the trial court's record, (4) the property division in the divorce decree does not properly reflect the terms provided in the MSA, and (5) the language of the MSA is ambiguous and Randy is prevented from using the unqualified mediator as an arbitrator pursuant to the terms of the MSA. Because we conclude that the trial court erred in dividing the parties' marital estate, we reverse and remand only that portion of the divorce decree relating to the division of property.[1]

## BACKGROUND

Tiffany and Randy married in January 1994. In December 2009, Randy filed his original petition for divorce. In his petition, he stated that he believed that the dispute could be resolved amicably by using the collaborative law process as provide in sections 6.6034 and 163.0072 of the Texas Family Code. Tiffany filed an original counter petition for divorce in February 2010, in which she stated that she believed she and Randy would enter into an agreement for the division of their estate and that if they did, she requested that the court approve the agreement and divide the estate in a manner consistent with the agreement.

Tiffany's original counsel moved to withdraw due to "ineffective communication" with Tiffany in September of 2010; Tiffany opposed his withdrawal. After a hearing conducted on October 6, 2010, the trial court signed an order permitting Tiffany's counsel to withdraw. On December 13, 2010, Tiffany designated new counsel. Tiffany filed an amended counter petition on January 18, 2011, in which, as is relevant here, she requested that the court make a

---

[1] The parties have three children of the marriage, but there is no dispute about the portion of the divorce decree concerning their children. We therefore affirm the remainder of the divorce decree.

2

just and right division of the marital estate. Two days later, Randy filed an opposed motion to compel mediation. However, at the hearing on the motion held on January 25, counsel for Tiffany stated, "We're not opposed to [mediation] at all. As a matter of fact, we've agreed to it. . . . Absolutely, we want to go to mediation." Trial was scheduled for February 14, 2011.

On January 27, Tiffany's counsel sent a letter via facsimile to Randy's counsel, stating:

> We are in agreeance [sic] with your suggestion of Randy Wilhite to mediate this matter. We did have a discussion with him when we were retained by our client asking him to possibly assist out with a business evaluation. We did not go any further with the matter after one phone call discussion. After speaking with Mr. Wilhite, he does not feel that there is a conflict of interest in mediating the matter, nor do we. He is available for mediation on February 4, 2011 for a full day of mediation.

> Our suggested mediator is Judge Squire. He is available in the afternoon on February 10th, all day February 11th and in the afternoon on February 12th.

> Please let us know which mediator you would like to use so we can set up mediation immediately.

Tiffany filed a motion for fees for mediation on January 28. In this motion, she requested that Randy pay all fees and expenses for mediation. Tiffany noted that she had recommended an alternative mediator, Judge Squire,[2] who charges less than the mediator selected by Randy, Randall Wilhite. Tiffany did not object to the use of Wilhite as a mediator in this motion. The court heard this motion on February 3, 2011. Tiffany was present at this hearing, but did not testify. Tiffany's counsel stated that Randy's counsel had contacted Mr. Whilhite's office and engaged him for mediation without her knowledge. She went on to state, "We

---

[2] Judge Squire's name is spelled both "Squire" and "Squier" in the record.

3

are requesting because my client does not have access to resources that [Randy] has, [he] pay the mediator. *We have no problems mediating with Randall [Wilhite]. We made that clear.*" (emphasis added). Randy's counsel stated that the parties were scheduled to mediate with Wilhite at 9:00 the next morning. The trial court denied Tiffany's motion and ordered the parties to split the mediation fees and costs equally.

At a motions hearing held on February 10, 2011, at which both Tiffany and Randy were present, counsel for Tiffany stated that the parties planned to mediate with Wilhite on Saturday, February 12. The record reflects that the mediation that had been scheduled with Wilhite on Friday, February 4, 2011 was cancelled due to inclement weather.[3] The trial court reiterated at the close of this hearing that trial was set to begin the following Monday, February 14.

Both Randy and Tiffany filed their inventory and appraisements and proposed property divisions on February 11. They, along with their counsel, attended mediation with Wilhite on February 12. At the end of the day-long mediation, Randy, Tiffany, and their counsel executed the MSA, pursuant to section 6.602 of the Texas Family Code. In pertinent part, the MSA provides:

> 5. **Final Documents**. Attorneys for Petitioner shall prepare the first drafts of the Final Decree of Divorce, the Agreement Incident to Divorce, and all conveyancing documents or assignments necessary to effect the establishment of the award of all property herein awarded to petition. Attorneys for Respondent shall prepare the first draft of all conveyancing documents necessary to effect the establishment of the award of all property herein awarded to Respondents. Both parties agree to execute all other documents reasonably required to effectuate the provisions of this settlement agreement. . . . If requested by either

---

[3] Tiffany's affidavit attached to her motion for new trial, in which she challenges the qualifications of Wilhite as a mediator, states that Judge Squier was the mediator scheduled for the canceled February 4th mediation, despite the indications in the record from the hearing on February 3rd and February 10th that Wilhite was the scheduled mediator for that date.

party, the Final Decree of Divorce will only refer to an Agreement Incident to Divorce, which will not be filed among the papers in this suit.

6. **Arbitration**. The parties shall submit (a) all drafting disputes, (b) issues regarding the interpretation of this settlement agreement, and (c) issues regarding the intent of the parties reflected in this settlement agreement to Randall B. Wilhite as an arbitrator, whose decision shall be binding on the parties, including decisions on the payment of attorney's fees and arbitration costs incurred as a result of the arbitration.

7. **Immediate Effect; Complete Agreement; Right to Judgment**. This agreement is effective upon signing and supersedes and supplants all other agreements, written or otherwise, between the parties. This agreement constitutes the full agreement between the parties and no evidence shall be admissible to vary the terms of this agreement. A party is entitled to judgment based on this settlement agreement.

. . .

16. **Agreement Signed Freely and With Approval of Attorney**. Each party to this settlement has entered into same freely and without duress after having consulted with professionals of his or her choice. Each party hereto has been advised by the Mediator that the Mediator is not the attorney or accountant for any party, hereby releases the mediator from any possible action or claims, and acknowledges that they have been advised that each party should have this agreement approved by that party's attorney prior to executing same.

. . .

18. **THIS AGREEMENT IS NOT SUBJECT TO REVOCATION**

As part of the MSA, Tiffany and Randy agreed to divide their community assets and liabilities pursuant to an attached spreadsheet, marked as "Exhibit A." Exhibit A was taken directly from Randy's Inventory and Appraisement and Proposed Division of Community Assets and Liabilities ("Randy's Proposed

5

Division"), with some interlineations and handwritten additions.[4] Both Tiffany and Randy initialed each page of the MSA, as well as all three pages of Exhibit A. Handwritten "Additional Terms" on page three of Exhibit A provide that Randy was to pay Tiffany (a) $1,000,000 cash on the day the divorce decree was signed or thirty days from the signing of the MSA, whichever was sooner, (b) $500,000 by noon on December 31, 2011, and (c) $170,000 by noon on June 30, 2012.

On February 16, the parties and their counsel appeared for trial. Prior to voir dire, counsel for Randy presented a motion to re-commit the parties to mediation to resolve the remaining parent-child issues. According to Randy's counsel, the parties had initially agreed to mediate these issues before Judge Squire beginning that morning, but Tiffany's counsel had left him a voice mail message the prior evening canceling the mediation. Randy's counsel sought an order from the trial court compelling the parties to mediate the parent-child issues. Tiffany's counsel responded that the parties had participated in mediation with Wilhite the previous Saturday "for over eight hours," during which time issues concerning child custody were also addressed. "Mr. Wilhite felt that there was an impass[e] with regards to that issue." The trial court denied Randy's motion to compel the parties to return to mediation on the parent-child issues. Shortly after denying the motion to compel, counsel for both Randy and Tiffany agreed that they were bound by the MSA. Tiffany was present when her counsel acknowledged that the parties were bound by the MSA. Tiffany and Randy proceeded to a jury trial on February 16, 17, and 18 solely on the issue of which joint managing conservator would have the exclusive right to designate the primary residence of their children.

---

[4] As discussed in more detail below, Exhibit A to the MSA is missing a page that is contained in Randy's Proposed Division.

The parties returned to court on June 6, 2011 to move forward with the remaining issues concerning the children. At that hearing, counsel for Randy informed the court that pursuant to the MSA, he had prepared an Agreement Incident to Divorce (the "AID"), which incorporated the terms of the property division of the MSA. He stated that both he and Tiffany's counsel believed that the AID accurately reflected the agreement of the parties, but that Tiffany refused to sign it. He requested that the trial court order the parties to sign the AID.

Tiffany's counsel called her to testify at this hearing. Tiffany acknowledged that she had signed the MSA after spending numerous hours in mediation. Tiffany testified that she believed that she had reason to revoke the MSA because she did not feel that it was a just and right division of the estate. She stated, "If I can revoke it, I would like to." She also acknowledged that she had received a copy of the AID, but stated that there had been "too many changes" made to it and she was "not sure" if there was any incorrect language in it. She declined to return to mediator Randall Wilhite for decisions or changes regarding the MSA or AID. When asked if she needed more time to review the AID, Tiffany replied that she could not afford any more time. Finally, when asked why she refused to sign the AID, she responded, "I never wanted a divorce in the first place."

The trial court informed Tiffany that once she had signed the MSA, it was binding on her and on the court. The trial judge stated that if there were drafting issues, he could send the parties back to the mediator, but that Tiffany had not identified any drafting issues. The trial court then stated,

> I don't know about an Agreement Incident to Divorce, Mr. Tindall [counsel for Randy]. . . . It's okay if they agree. But when they don't agree, I don't believe the Court can order her to sign a document. Although the Court can sign a Divorce Decree which incorporates the Mediated Settlement Agreement.

7

. . .

> [T]he Court approves and orders that the Mediated Settlement Agreement is approved by the Court, and will be signed by the Court because it is, Mom, not revocable. You cannot revoke it at this point without taking additional steps.

Because the parties had other issues for the trial court to determine regarding the children, the trial court re-set the remaining issues for hearing on June 13.

At the June 13th hearing, the trial court decided several issues concerning the rights and duties of the parents. Tiffany testified regarding the MSA. She again acknowledged that she had entered into the MSA. She stated that she would like to withdraw her consent to the MSA. The trial judge simply stated that Tiffany could request that relief, but that he could not grant it to her. Tiffany reiterated that she never wanted a divorce and that she never agreed to the use of "collaborative or corroborative law." At the end of this hearing, the trial court set the case for entry of judgment on July 1, 2011.

The trial court signed the final decree of divorce on July 1. In a section entitled "Agreement of Parties," the following language regarding the MSA is provided:

> The Court finds that the parties signed and entered into a valid and enforceable partition and exchange agreement as contained in the Mediated Settlement Agreement dated February 12, 2011. The Court has approved the agreement and partition and exchange agreement of the parties and hereby incorporates all of those provisions with regard to the division of property as if set out verbatim herein. The court finds that the Mediated Settlement provides for a just and right division of the parties' marital assets and liabilities, having due regard for the rights of each party and the children of the marriage.

The "Division of Marital Estate" section provides as follows:

8

> The Court finds that the parties entered into a partition and exchange agreement in accordance with the Mediated Settlement Agreement dated February 12, 2011. The Court has approved the agreement and partition and exchange agreement of the parties and hereby incorporates all of those provisions with regard to the division of property as if set out verbatim herein. The court finds that the Mediated Settlement provides for a just and right division of the parties' marital assets and liabilities, having due regard for the rights of each party and the children of the marriage. IT IS THEREFORE ORDERED AND DECREED that all property is hereby divided as between the parties in accordance with the provisions of the Mediated Settlement Agreement signed by both parties and their respective attorneys on February 12, 2011.

The divorce decree also ordered each party to execute and have acknowledged certain documents attached to the decree. As is relevant to this appeal, Tiffany was ordered to complete the appropriate paperwork to assign her interest in several companies, described more fully below, to Randy. Neither Tiffany nor Randy signed the decree of divorce. Counsel for each of them signed the divorce decree, approving it "as to form only."[5]

On August 1, 2011, Tiffany, represented by new counsel,[6] filed a "withdrawal of consent" to the MSA and a motion for new trial related only to property issues. In this motion, for the first time Tiffany asserted that the mediation process was tainted by the use of a mediator who was not qualified. Specifically, Tiffany complained that Wilhite had received a "great deal of privileged information" from her former counsel and was going to act as co-counsel. According to Tiffany, Wilhite was unable to attend a scheduled meeting

---

[5] On Tiffany's motion, the trial court signed a judgment nunc pro tunc on August 10, 2011, correcting an error in the portion of the decree concerning the parent-child relationship. The judgment nunc pro tunc is again signed "approved as to form" by counsel for Randy and Tiffany, but it is not signed by either of them.

[6] The trial court did not sign the order granting Tiffany's substitution of counsel until August 17, 2011.

with her and her former counsel, and Tiffany requested that no second meeting be scheduled. Tiffany asserted that she never knowingly waived her right to the attorney-client privilege that arose from Wilhite's assistance as an advocate for her in this case. Tiffany further alleged that there was legally and factually insufficient evidence to support the property award found in the divorce decree because the MSA was not presented to the trial court at or prior to the trial court signing the decree. Finally, Tiffany contended that the decree does not properly reflect the MSA based on the ordered assignment to Randy of eight companies that were not included in the MSA.

The trial court heard the motion for new trial on September 14, 2011. Tiffany, Randy, and their attorneys were present. After hearing the argument of counsel and inquiring whether counsel had "anything else" to present, the court orally denied the motion.[7] The trial court signed an order denying the motion for new trial on September 20, 2011. This appeal timely followed.

## DISQUALIFICATION OF MEDIATOR

In Tiffany's first issue, she asserts that the trial court abused its discretion by basing its property division on an MSA procured with the use of an unqualified mediator. In this issue, she attempts to invalidate the MSA by asserting, nearly six months after she signed the MSA, that the mediator, Randall Wilhite, was disqualified due to a conflict of interest. In her related second issue, she argues that the trial court abused its discretion by refusing to permit her to present

---

[7] After a recess, the parties returned to the bench. Tiffany's counsel requested that the court sign late-filed findings of fact and conclusions of law, although he acknowledged that he had failed to give notice that they were past due. The trial court declined to sign the findings and conclusion because the notice of past-due findings was not filed. Tiffany's counsel then asked, "Judge, can I put on a Bill of Exception in terms of [Tiffany's] testimony about consent on the Motion for New Trial, just to show that she was not doing an informed consent?" Opposing counsel objected on the grounds that the trial court had already ruled on the motion for new trial and that the hearing was not an evidentiary one. The trial court denied the request.

10

evidence at the hearing on her motion for new trial in support of her allegations that Wilhite was disqualified. We begin our analysis of these two issues with an overview of the law concerning mediated settlement agreements under section 6.602 of the Texas Family Code.

An MSA is immediately binding on the parties if the agreement: (1) provides in a prominently displayed statement that is in boldfaced type, capital letters, or underlined, that the agreement "is not subject to revocation"; (2) is signed by the parties; and (3) is signed by the parties' attorneys who are present at the time of signing. Tex. Fam. Code § 6.602(b). If an MSA meets these requirements, a party is entitled to judgment notwithstanding Rule 11 of the Texas Rules of Civil Procedure or another rule of law. *Id.* § 6.602(c). Compliance with section 6.602 makes the agreement an exception to Family Code sections 7.001 and 7.006, which allow revision and repudiation of settlement agreements. *See id.* §§ 7.001, 7.006; *In re Joyner*, 196 S.W.3d 883, 889 (Tex. App.—Texarkana 2006, pet. denied). But a court is not required to enforce an MSA if it is illegal in nature or procured by fraud, duress, coercion, or other dishonest means. *Joyner*, 196 S.W.3d at 890; *Boyd v. Boyd*, 67 S.W.3d 398, 404–05 (Tex. App.—Fort Worth 2002, no pet.) (determining that section 6.602 MSA may be subject to rescission due to intentional nondisclosure.); *In re Kasschau*, 11 S.W.3d 305, 312 (Tex. App.—Houston [14th Dist.] 1999, orig. proceeding) (holding that a section 6.602 MSA may be set aside on the ground of illegality).

Tiffany does not dispute that the MSA meets all the requirements of Texas Family Code section 6.602. Further, Tiffany does not complain that the MSA is illegal or that it was procured by fraud, duress, coercion, or some other dishonest

11

means.[8]  Thus, it does not appear that she has presented appropriate grounds for revocation of the MSA.  Instead, as noted above, she challenges the validity of the MSA based on a last-minute attempt to disqualify the mediator.

Even if this complaint were a ground for revoking the MSA, an issue we do not address, Tiffany has waived any alleged conflict of interest resulting from Wilhite's alleged involvement with her case and subsequent mediation of the division of the marital estate.  First, as discussed above, her counsel specifically stated on two separate occasions that they agreed to the use of Randall Wilhite as a mediator:  in the January 27, 2011 letter and at the February 3, 2011 hearing.  Second, Tiffany was present at the February 3 and February 10 hearings, both described above, where mediation with Wilhite was discussed.  She made no complaints or objections to the use of Wilhite as a mediator.  Third, she attended mediation on February 12 and signed the MSA.

According to the Ethical Guidelines for Mediators, promulgated by the Supreme Court of Texas, a mediator should disclose possible conflicts:

> Prior to commencing the mediation, the mediator should make full disclosure of any known relationships with the parties or their counsel that may affect or give the appearance of affecting the mediator's neutrality.  A mediator should not serve in the matter if a party makes

---

[8] Tiffany asserts in her pro se reply brief that the MSA was procured by fraud, duress, and coercion, but these issues were not presented to the trial court or in her initial brief.  Thus, we do not consider them on appeal.  *See* Tex. R. App. P. 33.1 (requiring that, as a general prerequisite to appellate review, an issue must first be timely presented to the trial court); Tex. R. App. P. 38.3; *Priddy v. Rawson*, 282 S.W.3d 588, 597 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) ("The Texas Rules of Appellate Procedure do not allow an appellant to include in a reply brief a new issue not raised in the appellant's original brief.").

We further note that Randy filed a motion to strike the documents Tiffany attached to her reply brief.  To the extent that any documents attached to her reply brief are not included in our record, we do not consider them.  *See San Jacinto Methodist Hosp. v. Bennett*, 256 S.W.3d 806, 815 n.14 (Tex. App.—Houston [14th Dist.] 2008, no pet.).  Accordingly, we deny Randy's motion as moot.

> an objection to the mediator based upon a conflict or perceived conflict.

Ethical Guidelines for Mediators, Misc. Docket No. 05-9107 (June 13, 2005), *available at* www.supreme.courts.state.tx.us/MiscDocket/05/05910700.pdf. Nothing in our record indicates that Tiffany ever objected to Wilhite based upon a conflict or perceived conflict at any time before the mediation occurred and she signed the MSA.[9] Further, as noted *supra*, Tiffany did not speak up on February 16 when her counsel acknowledged that the parties were bound by the MSA, which appears to be the first opportunity she had to express her dissatisfaction with Wilhite on the record after the mediation.

Indeed, Tiffany expressed her desire to "revoke" the MSA for the first time on June 6, 2011, nearly four months after signing it. At the hearing on this date, she stated that she wanted to revoke the MSA because it was not a just and right division of the marital estate and because she "never wanted a divorce in the first place."[10] But unlike other family law settlement agreements, the trial court need not determine if the property division is "just and right" before approving an MSA, and once signed, an MSA cannot be revoked like other settlement agreements. *Milner v. Milner*, 361 S.W.3d 615, 618 (Tex. 2012).[11]

Tiffany did not challenge the qualifications of Wilhite as a mediator until she filed her motion for new trial on August 1, 2011, a month after the decree of

---

[9] We note that the parties were ordered to attend mediation, not to reach a mediation agreement.

[10] She reiterated these reasons for "withdrawing" her consent to the MSA at the June 13, 2011 hearing.

[11] The *Milner* Court went on to note that several courts of appeals have concluded that section 6.602 does not require the enforcement of an MSA that is illegal in nature or procured by fraud, duress, coercion, or other dishonest means, but left the applicability of those defenses for another case because the appeal at issue did not involve any of those allegations. *Milner*, 361 S.W.3d at 619.

13

divorce incorporating the MSA by reference was signed by the trial court and nearly six months after the MSA was signed. For the first time, she alleged that Wilhite was disqualified due to a conflict of interest based on her alleged attorney-client relationship with him.[12]

Attorney conflicts of interest are governed by the Texas Disciplinary Rules of Professional Conduct. Complaints based on violations of these rules are waived if not timely raised. *E.g.*, *Buck v. Palmer*, 381 S.W.3d 525, 528 (Tex. 2012) ("The court of appeals held that Buck's unexplained seven-month delay in seeking the attorney's disqualification [based on an alleged conflict of interest] was sufficient to establish waiver. We have held that a delay of *even less time* waives a motion to disqualify." (emphasis added).); *Vaughan v. Walther*, 875 S.W.2d 690, 690–91 (Tex. 1994) (orig. proceeding) (holding that delay of six and a half months between time that party became aware of possible conflict of interest and seeking to disqualify attorney resulted in waiver of that party's right to disqualify attorney); *see also Jones v. Lurie*, 32 S.W.3d 737, 744 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (op. on reh'g). Tiffany waited nearly six months after Wilhite conducted the mediation to complain that he was disqualified by an alleged conflict of interest. Thus, she has waived any alleged conflict of interest regarding Wilhite. *Buck*, 381 S.W.3d at 528. Because Tiffany waived any alleged conflict of interest regarding Wilhite, he was not an unqualified mediator. Accordingly, the trial court did not abuse its discretion in basing its property division on the MSA.

---

[12] In her motion for new trial, Tiffany stated that her prior attorney had initiated conversations with Wilhite in an effort to obtain Wilhite's assistance as co-counsel and had shared a "great deal of privileged information" with him. However, these allegations are contrary to her counsel's description of Wilhite's involvement in Tiffany's case: "We did have a discussion with him when we were retained by our client asking him to possibly assist out with a business evaluation. We did not go any further with the matter after one phone call discussion."

For the foregoing reasons, we overrule Tiffany's first issue. Additionally, because Tiffany waived her right to disqualify Wilhite by failing to timely raise it, the trial court did not abuse its discretion by refusing to allow her to present evidence after it denied her motion for new trial in support of her disqualification allegations.[13] Accordingly, we overrule her second issue.

## APPROVAL OF THE MSA

In her third issue, Tiffany contends that the trial court erroneously signed the divorce decree allegedly containing the terms of the MSA because the MSA was not part of the trial court's record when it signed the decree. We begin by noting that Tiffany does not claim that the trial court did not *see* or *approve* the MSA before incorporating it by reference into the divorce decree; instead, she claims that the trial court could not have performed the "ministerial act" of signing the divorce decree because the MSA was not made a part of the record before the decree was signed.

It is undisputed that the parties signed the MSA on February 12, 2011. Tiffany admitted she signed the MSA in open court. When the parties appeared before the court on February 16, Randy's counsel announced that they had settled all property issues. Tiffany's counsel unequivocally stated that the MSA meets the requirements of the Family Code and that the court can approve it as a "ministerial

---

[13] As noted above, Tiffany's counsel attempted to make a "bill of exception" *after* the trial court had denied her motion for new trial. Generally, to preserve error in the exclusion of evidence, a party must attempt *during the evidentiary portion of the trial* to introduce the evidence. *Ulogo v. Villanueva*, 177 S.W.3d 496, 501 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (op. on reh'g) (citing *Carlile v. RLS Legal Solutions, Inc.*, 138 S.W.3d 403, 411 (Tex. App.—Houston [14th Dist.] 2004, no pet.) and Tex. R. App. P. 33.1(a)). Further, when the trial court denied Tiffany's attempted bill of exception, she still could have filed a formal bill of exception. *See* Tex. R. App. P. 33.2. Such a bill is appropriate to complain on appeal about a matter that would not otherwise appear in the record and must be filed no later than thirty days after the filing party's notice of appeal is filed. Tex. R. App. P. 33.2.

act." Her counsel further acknowledged more than once that the parties were bound by the MSA. The trial court announced on February 16 that it would "honor and approve" the MSA as a "ministerial act" of the court. Thereafter, the parties proceeded with a jury trial only on the issue of primary conservatorship. During the jury trial, Tiffany acknowledged that property issues had been resolved "in another manner."

After the jury trial, the parties proceeded before the bench only on matters of support and possession of their children. Although Tiffany attempted to orally "withdraw" her consent to the MSA, the trial court explained that she could not do so and that it was binding on all parties immediately upon signing. Additionally, section 6.602 entitles a party to judgment based on an MSA if it meets certain requirements. Tex. Fam. Code § 6.602(c). As noted above, Tiffany does not dispute that the MSA meets all the requirements of section 6.602. The trial court does not have to determine if the property division is "just and right" before approving an MSA, and once signed, an MSA cannot be revoked like other settlement agreements. *Milner*, 361 S.W.3d at 618. Further, the record contains a copy of the MSA attached to proposed findings of fact and conclusions of law filed by Randy's counsel on August 31, 2011.[14] Thus, the MSA was made a part of the record prior to the hearing on Tiffany's motion for new trial conducted on September 14, 2011.[15]

---

[14] These findings and conclusions were not signed by the trial court because Tiffany's counsel failed to file a notice of past due findings pursuant to Texas Rule of Civil Procedure 297.

[15] Interestingly, as described above, the MSA provides that the first drafts of the decree of divorce and the AID—which, as noted above, Tiffany refused to sign—would be prepared by Randy's counsel. On the request of either party, the final divorce decree "will only refer to" the AID, "which will not be filed among the papers in this suit." Thus, in drafting the MSA, the parties specifically contemplated that the AID would not be included in the papers filed with the court.

Finally, the MSA explicitly states that it functions as a partition and exchange agreement pursuant to Texas Family Code section 4.102:

> **Partition and Exchange Agreement**. The provisions of this agreement serve[] as a partition and exchange agreement of all property set forth herein to the person to whom such property is awarded. All future income of a party and/or from any property herein awarded to a party is partitioned to the person to whom the property is awarded. All future earnings from each party are partitioned to the person providing the services giving rise to the earnings. This partition and exchange agreement is pursuant to Texas Family Code, Section 4.102 and in this respect, each party waives further disclosure of property and debts of the other party. A spouse holding title to property herein awarded or confirmed to the other spouse shall hold such property as a constructive trustee until such time that title to or other muniment to the property can be transferred to the spouse to whom such property is awarded or confirmed.

*See* Tex. Fam. Code § 4.102 (providing that spouses may partition or exchange between themselves at any time all or part of their community property and that property transferred by a partition and exchange agreement becomes that spouse's separate property). A partition agreement does not require judicial approval. *Hopkins v. Hopkins*, No. 03-03-00629-CV, 2006 WL 112622, at \*4 (Tex. App.—Austin April 27, 2006, pet. denied). Thus, at the time they signed the MSA, the Diggs also signed a partition and exchange agreement, which, without judicial approval, operated as of February 12, 2011 to partition all of their community property into separate property as reflected in Exhibit "A" attached to the MSA. *Cf. id.* (finding partition and exchange agreement dividing community property into separate property legally enforceable at time it was signed); Tex. Fam. Code § 6.604(d) (providing that, once a trial court approves a written informal settlement agreement, it "may set forth the agreement in full or incorporate the agreement by reference in the final decree").

In light of the above, we fail to see how the trial court reversibly erred by signing the divorce decree incorporating the property division reflected in the MSA by reference when the court had already approved it, the partition and exchange agreement within it needed no judicial approval to effectuate the division of the parties' marital estate, and a copy of the MSA is contained in our record. *See* Tex. R. App. P. 44.1(a) (stating that no judgment may be reversed on appeal on the ground that the trial court erred unless the court of appeals concludes that the error probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting her case to the court of appeals). Accordingly, we overrule Tiffany's third issue.

## TERMS OF THE MSA

In her fourth issue, Tiffany asserts that the property division in the divorce decree does not properly reflect the terms of the MSA, and thus she is entitled to set aside the award of property not found in the MSA. She contends that Randy is precluded from returning to Wilhite for binding arbitration pursuant to section 6 of the MSA in her fifth issue. We consider these related issues concerning the interpretation of the MSA together.

We interpret the MSA under rules of contract interpretation. *See Milner*, 361 S.W.3d at 619. If the agreement's language can be given a certain and definite meaning, the agreement is not ambiguous, and its construction is a matter for the court. *Id.* If the agreement is susceptible to more than one reasonable interpretation, then the agreement is ambiguous, which creates a fact issue on the parties' intent. *Id.* We may not consider extrinsic evidence for the purpose of creating an ambiguity or giving the MSA a meaning different from that which its language imports. *See Toler v. Sanders*, 371 S.W.3d 477, 480–81 (Tex. App.— Houston [1st Dist.] 2012, no pet.).

18

This dispute centers around item 23 listed on Exhibit A attached to the MSA, described as "MoBetter Meat Company, Inc. and Affiliated Companies." This item was awarded to Randy; the estimated value of this item states, "See attached Spreadsheet." As noted *supra*, Exhibit A is Randy's Proposed Division, with some interlineations and handwritten additions.[16] However, Randy's Proposed Division included a spreadsheet entitled "MoBetter Meat Company, Inc. and Affiliated Companies Net Assets." Randy acknowledges in his appellate brief that the MSA executed by the parties and their counsel on February 12, 2011 did not include a copy of this additional spreadsheet.

In addition to MoBetter Meat Company, eight other companies are listed on this spreadsheet (collectively, the "MoBetter Meat Companies"). The eight other companies include: RD Rentals Ltd.; Allegiance Holdings, Ltd.; Allegiance Management, Inc.; Absolute Executive Services, Inc.; Purpose Driven Investments, LP; Randy's Fine Foods Inc.; Randy's Fine Homes LLC; and Great Pacific Investments, LLC. Randy lists the net assets of the MoBetter Meat Companies as $3,757,636.00. Tiffany included the MoBetter Meat Companies on her inventory and proposed division of property. She identified these companies under the term, "Business Interests." Her inventory and proposed division indicated that Randy proposed that he be awarded these companies, but she did not propose a division of these companies. She provided Randy's valuation of these companies, but listed her valuation as "TBD."

Tiffany asserts that the "affiliated companies" included on the spreadsheet attached to Randy's Proposed Division were not divided by the MSA. She argues

---

[16] As is relative to this particular item, on Randy's Proposed Division, this item is designated as Randy's Separate Estate, while on Exhibit A to the MSA, this designation has been struck out and next to the line describing this item, an "X" is placed in the column indicating it has been awarded to Randy.

that the trial court, by ordering her to execute an assignment of interest detailing the identity of the eight companies not specifically identified in the MSA, impermissibly modified the MSA. The Family Code does not authorize a court to modify an MSA, to resolve ambiguities or otherwise, before incorporating it into a decree. *See Beyers v. Roberts*, 199 S.W.3d 354, 362 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (observing that trial court's modifications to settlement agreements are typically grounds for reversal where modifications "add terms, significantly alter the original terms, or undermine the intent of the parties").

Randy, on the other hand, points out that the MSA explicitly states, "Each party represents and warrants to the other party that he/she has made a full disclosure of all property and obligations of the parties (both community and separate) and that this settlement agreement divides, confirms and/or allocates all such items."[17] He argues that the "affiliated companies" were detailed and

---

[17] Randy also asserts that because Tiffany's counsel approved the final divorce decree as to form, Tiffany is bound by the judgment. But signing a judgment with the notation "approved as to form only," as Tiffany's counsel did here, manifests a party's intent to initiate the appellate process without being bound by the terms of the judgment. *See Soon Phat, L.P. v. Alvarado*, 396 S.W.3d 78, 95–96 (Tex. App.—Houston [14th Dist.] 2013, pet. filed) (citing *First Nat'l Bank of Beevile v. Fojtik*, 775 S.W.2d 632, 633 (Tex. 1989) (per curiam)). Thus, we do not consider Tiffany bound by the decree because she did not sign it herself, and her counsel only approved it as to form. *See id.*

Randy further contends that Tiffany approved the MSA, her counsel approved the AID, the record reflects that Tiffany was aware of Randy's claim that the eight companies she was ordered to assign to Randy were "affiliated companies," Randy stated on the record that he owned at least seven business entities other than MoBetter Meats and Randy's Fine Foods, and Tiffany had "a duty to speak" if she was uncertain of the meaning of "Affiliated Companies." Most of these arguments would require us to refer to extrinsic evidence, which we may not do when considering the meaning of an MSA. *See Toler*, 371 S.W.3d at 480–81. Moreover, Tiffany, when faced with the divorce decree for the first time, refused to sign it. Additionally, she filed a motion for new trial raising her complaint regarding the inclusion of these eight companies in the division of property in the divorce decree. Although Tiffany approved the MSA, she did not sign the divorce decree, and she raised this specific complaint in her motion for new trial. Thus, she sufficiently preserved this complaint for our review. *See* Tex. R. App. P. 33.1(a)(1)(A); *see also Brantley v. Brantley*, No. 14-11-00583-CV, 2012 WL 727700, at *3 (Tex. App.—Houston [14th Dist.] March 6, 2012, no pet.) ("To preserve a complaint of error in a

20

disclosed by each party within their respective sworn inventories and appraisements. Randy asserts that the final judgment does not add or significantly alter the terms of the MSA or undermine the intent of the parties. *See Beyers*, 199 S.W.3d at 362. Thus, according to Randy, the trial court did not impermissibly modify the MSA by ordering Tiffany to assign her interest in the MoBetter Meat Companies to Randy; rather, it simply effectuated the intent of the parties as expressed in the MSA.

Under line item 23 on Exhibit A to the MSA, Randy is awarded "MoBetter Meat Company, Inc. and Affiliated Companies." No other companies are listed anywhere else in the division of property in the MSA. The MSA apparently contemplates that Randy was to be awarded more than just MoBetter Meat Company. But without reference to extrinsic evidence, such as the reporter's record, items in the clerk's record including the parties' inventories and appraisements, or Tiffany's affidavit, we cannot determine what other companies the parties intended to convey to Randy in the property division contained in the MSA.[18] We conclude that because the MSA purports to convey more than just MoBetter Meat Company to Randy, but does not establish what other companies are to be conveyed to him, its meaning is ambiguous and the parties' intent is therefore a question of fact. *See Milner*, 361 S.W.3d at 622.

Because there was a fact question regarding the parties' intent, the trial court should not have determined which companies, other than MoBetter Meat Company, were to be awarded to Randy in the final decree of divorce.

---

judgment, a party must apprise the trial court of its objection by a motion to amend or correct the judgment, a motion for new trial, or some other similar method." (internal quotations and citation omitted)).

[18] As noted above, both parties identified eight other business entities in their inventories and proposed property divisions.

21

Accordingly, we sustain Tiffany's fifth issue. We reverse only that portion of the divorce decree concerning the division of the marital estate and remand for proceedings consistent with this opinion.

However, pursuant to section 6 of the MSA, the parties are required to return to the mediator for binding arbitration in the event of a dispute regarding the drafting of the MSA, issues regarding interpretation of the MSA, and issues regarding the intent of the parties as reflected in the MSA. We have determined that there is a fact question regarding the intent of the parties as reflected in the MSA regarding what companies, in addition to MoBetter Meat Company, if any,[19] were awarded to Randy. The parties should be ordered to return to mediator Randall Wilhite for binding arbitration to resolve this issue Thus, we overrule Tiffany's fifth issue, in which she asserts that Randy is precluded from insisting that they return to Wilhite for arbitration.

---

[19] If the mediator determines that the parties did not intend to award all or any of the eight companies, other than MoBetter Meat Company, to Randy in the MSA, section 12 of the MSA provides for the following post-decree proceedings regarding division of property:

> b. Both parties reserve all rights to divide property not divided or awarded to a party in the Final Decree of Divorce and Agreement Incident to Divorce.
>
> c. A party seeking to divide property not divided or awarded to a party shall give written notice to the other party of their intention to mediate issues regarding a post-decree division of property. If, within ten days after receipt of the written notice, the parties cannot agree on a mediator or the other party does not agree to mediation or fails to attend a scheduled mediation of the controversy, the party seeking a post-decree division of property shall be released from the obligation to mediate and shall be free to file suit.
>
> d. Exclusive venue for any post-decree proceeding shall be in the county where the Final Decree of Divorce was rendered.

In summary, we have overruled Tiffany's first, second, third, and fifth issues. However, we have sustained her fourth issue. Accordingly, we reverse and remand only that portion of the divorce decree concerning the division of the parties' marital estate for proceedings consistent with this opinion. We affirm the remainder of the divorce decree.


/s/      Tracy Christopher
Justice


Panel consists of Justices Brown, Christopher, and McCally.